[Crim. No. 40946. Second Dist., Div. Five. Sept. 22, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT K. VUKSANOVICH, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Plaintiff and Appellant.

Stephan A. DeSales for Defendant and Respondent.

OPINION

**STEPHENS, J.**—This is an appeal by the People from an order of dismissal following a Penal Code section 995 motion. Defendant had been charged with embezzlement ($117,666.34) from Saint Sava Serbian Church and three counts of forgery. This appeal is limited to the dismissal of the forgery counts II, III and IV. Since one issue is as to the declared unfairness of the preliminary hearing, consideration of evidentiary rulings, or lack thereof, pertaining to the embezzlement charges is necessary.

The facts as shown by the preliminary hearing are that defendant was the financial secretary for the church for several years. The church

had a monetary system wherein persons other than defendant participated in the collection and accounting of church funds from such enterprises as bingo, hall rentals and contributions. Considerable sums were amassed from the church activities and the funds were at first placed in the church safe along with a tab of the totals. Defendant would then pick up the funds from the safe, apparently satisfying himself as to the correctness of the totals and then make the deposits into certain bank accounts. The system was later changed so as to permit night deposits without the funds being kept in the church safe. The bulk of the evidence was in the nature of photocopies of original deposit slips, withdrawal slips, checks and check stubs and church ledgers and bank deposit records. Voyo Sugich, the church treasurer, testified at length about the system used by the church in accumulating and depositing the funds. Defendant objected to the admission of the copies on hearsay, best evidence and foundational grounds. Upon the assurance of the prosecutor that the exhibits would be connected up, the court reserved ruling on the objections and reserved a motion to strike on behalf of defendant. Since there were some 150 exhibits, first offered for identification and finally offered into evidence, defendant was given a running objection to all of the documents marked for identification and referred to in the testimony of the witnesses. In addition to Sugich other witnesses on behalf of the prosecution were called and it was established that Nick Ratkovich was a church president during part of the time in question and was a necessary signatory on certain checks. While the record does not establish the position held by George Vukovich within the church, it is clear that during a portion of the time in question, he was a necessary signatory on church checks.

Following the testimony of the church members, bank representatives testified providing adequate foundation for the numerous exhibits theretofore marked for identification and the best evidence objection was satisfied but with the use of the photocopies so far as the preliminary was concerned. The court ruled that the reserved objections and motions to strike were overruled and denied and the documents and testimony as to them admitted.

To complete the evidence as to the forgery counts, the following stipulations were entered into:

"MR. DE SALES [Defense Counsel]: Well, I would like the record to reflect that, with respect to the forgery, I am willing to stipulate that

Mr. Nick Ratkovich, if called and sworn, would testify that the items in question as to the forgery counts which purport to be his signature—

"Ms. FROHREICH [Prosecutor]: That is People's 68 and People's 1.

"MR. DE SALES:—are not in fact or were not in fact signed by him nor did he give anyone permission to sign those items for him.

"Ms. FROHREICH: Excuse me, is that—

"THE COURT: Let counsel state his full stipulation. Is that the extent of it, Mr. De Sales?

"MR. DE SALES: Yes, as to Mr. Ratkovich.

"Ms. FROHREICH: Is that I would or you are stipulating?

"MR. DE SALES: I am.

"Ms. FROHREICH: People accept that stipulation.

"MR. DE SALES: Okay.

"THE COURT: All right. Let me take a look now.

"Ms. FROHREICH: I am not resting.

"MR. DE SALES: I would also like the record to reflect—

"THE COURT: I want to make a notation of the stipulation. This will be the two forgery counts?

"Ms. FROHREICH: That is right, and they refer to People's 68 and People's 1, your Honor.

"THE COURT: Counts 2, 3 and 4. There are three forgery counts.

"Ms. FROHREICH: That is right. Let me have a moment, your Honor. I may have misled counsel on one point.

"THE COURT: That signature is that of—what's his name?

"Mr. De Sales: Nick Ratkovich.

"The Court: On People's—which ones are those?

"Ms. Frohreich: It would be counts 2 and 3, and as to count 2, it would be People's 1, and with count 3 it would be People's 68.

"There is one forgery count on which there is not an exhibit at this time.

"The Court: All right. People's 1 and 68 are not Nick Ratkovich's signature and he did not authorize anyone to sign them.

"Mr. De Sales: For purposes of the preliminary hearing only.

"The Court: The stipulation is for the preliminary hearing only.

"Ms. Frohreich: I have another exhibit if counsel would like to stipulate on that as well that we would like to enter at this time.

"The Court: Wait a minute. That is one stipulation that has been accepted and out of the way.

"What stipulation do you wish to request?

"Ms. Frohreich: Well, if Counsel would like to, at least [get] victims of the forgeries testimony out of the way, I have in my hand a xerox copy of a withdrawal from Coast Federal Savings account 452305 dated April 28, 1980 in the amount of $41,629.26. The teller stamp is also April 28, 1980 and we would mark that as People's exhibit next in order.

"The Court: Do you have copies of this?

"Ms. Frohreich: No, I don't, your Honor.

"The witness and victim on that particular account is George Vukovich.

"Mr. De Sales: I would be willing to stipulate for the preliminary hearing only that the signature on People's 138, which purports to be that of George Vukovich, if Mr. Vukovich was called and duly sworn,

he would testify that he didn't sign that he didn't authorize anyone to authorize the same.

"MS. FROHREICH: People would accept that stipulation.

"THE COURT: You are offering it and counsel is accepting the stipulation?

"MR. DE SALES: Yes, the item hasn't been—well, very well. I will offer the stipulation as it relates to that item, 138, for this hearing only.

"MS. FROHREICH: If I might have a moment to note the exhibit, your Honor.

"MR. DE SALES: Could you provide me with a copy of it Monday?

"MS. FROHREICH: Sure."

Following the admission into evidence of the exhibits, a confession in affidavit form was offered and admitted.

Bozo Milinovich testified that in 1980 he was an officer of the church. On May 11, 1980, he was present at a meeting with other officers of the church as well as the defendant. No police officers were present. At this meeting, defendant was presented with People's exhibit 144, a two-page document outlining his alleged unlawful activity concerning church funds and asked to read and sign it. Defendant was not threatened or otherwise coerced to sign People's exhibit 144. After reading it and discussing its contents, defendant signed it. People's exhibit 144 states in pertinent part:

"AFFIDAVIT

"STATE OF CALIFORNIA    )
                             )   ss
COUNTY OF LOS ANGELES   )

"I, BOB VUKSANOVICH, of 6821 Foxborough Court, Yorba Linda, California, hereby declare:

"On or about July of 1979, I started to take money out of the St. Sava Serbian Orthodox Church of San Gabriel, California, bank ac-

counts and misappropriated them for my own personal use. Since July of 1979, to February of 1980, I have taken for my personal use approximately $125,000.00 from the bank accounts of the St. Sava Church.

"I withdrew said funds without the authority, knowledge or permission of the priest, of any officer, member of any Board, of any member of the Congregation or of anyone associated or, connected with the St. Sava Serbian Orthodox Church of San Gabriel.

"I withdrew cash from the St. Sava Church accounts and made withdrawals in the name of the St. Sava Church and converted said cash and withdrawals to my personal use. To cover up my withdrawals, I forged the names of two of the Presidents of the St. Sava Church to transfer other Church funds into the short accounts.

"    .    .    .    .    .    .    .    .    .    .    .    .

"I hereby certify and declare under penalty of perjury that the foregoing is true and correct.

"Executed in San Gabriel, California, on May 11, 1980.

"(Signed) Bob Vuksanovich

BOB VUKSANOVICH
Declarant"

Defendant, in his argument on a Penal Code section 995 motion for dismissal, raised the issue of an unfair procedure adopted by the preliminary hearing magistrate. Defendant argues, "It is the defendant's contention that the magistrate improperly withheld ruling on an inordinate number of defense motions and objections throughout the hearing holding—

"'Now, as to those, all defense objections that are now pending are overruled and all of the defense motions to strike are denied.'"

On June 25, 1981, this motion came on for hearing. The court indicated it had read the points and authorities submitted by both counsel and then stated in essence that, although defendant was probably guilty of the charges, it appeared he had not been given a fair preliminary hearing, because of the way numerous objections by defense counsel

were not ruled on until the conclusion of the presentation of the evidence.

The following colloquy took place:

"Ms. FROHREICH [Prosecutor]: So, it is the court's view that the defendant was denied due process, and even though he was exercising his discretion under Evidence Code 350 to admit the evidence out of order?

"THE COURT: There is nothing in here to indicate he was exercising any discretion at all, other than he was putting down the rules on some objections that should have been made at the time the objections were made or if he decided to make rulings at a later time, give counsel an opportunity to argue as to the merits of the objection.

"Ms. FROHREICH: So, the court is not satisfied that the foundation was ultimately laid, or merely that it procedurally was handled to the prejudice of the defendant?

"THE COURT: That's not the way to handle objections in complex fraud cases or simple one-count assault cases.

"The Supreme Court has dictated pretty much that a person has to have a fair preliminary hearing. If it procedurally does not follow the requirements of the Penal Code, it cannot stand.

"After further argument and discussion, the court granted defendant's motion to dismiss."

■ The People have appealed, raising two issues: (1) The evidence is sufficient to raise a strong suspicion that defendant committed the three forgeries alleged in counts II, III and IV; and (2) whether he was given a fair preliminary hearing.

*People* v. *Park* (1978) 87 Cal.App.3d 550 at pages 560-561 [151 Cal.Rptr. 146] sets forth the basic rules pertaining to setting aside an information: "As reiterated time and again, an information will not be set aside if there is some rational ground for assuming the *possibility* that an offense has been committed and the accused is guilty of it. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]). On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court,

nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate acting as a person of ordinary caution or prudence, could conscientiously entertain *a reasonable suspicion* that a public offense had been committed in which the defendant had participated (*People* v. *Jablon* (1957) 153 Cal.App.2d 456, 459 [314 P.2d 824]). Neither the trial court in a Penal Code section 995 proceeding (*People* v. *Landry* (1964) 230 Cal.App.2d 775, 779 [41 Cal.Rptr. 202]; *Hacker* v. *Superior Court* (1968) 268 Cal.App.2d 387, 392-393 [73 Cal.Rptr. 907]) nor a reviewing court on appeal therefrom may substitute its judgment as to the weight of evidence for that of the committing magistrate (*People* v. *Cirilli* (1968) 265 Cal.App.2d 607, 612-613 [71 Cal.Rptr. 604]; *Rideout* v. *Superior Court, supra*). Although the magistrate in reaching his decision may weigh the evidence, resolve conflicts, and give and withhold credence to witnesses, such a balancing of the evidence is not within the power of a tribunal reviewing the magistrate's order (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529]). Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information (*People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664]; *People* v. *Harmon* (1973) 33 Cal.App.3d 308, 311 [108 Cal.Rptr. 43])." (Italics in original.)

As to the forgery counts, the elements of forgery have been established adequately to support the magistrate's holding of the defendant to answer. The checks were properly admitted in evidence. The stipulation covered the lack of authority for anyone other than Ratkovich and Vukovich to sign their respective names to the specific checks and the signatures were not theirs. There were bank record exhibits which bore the true signatures of both Ratkovich and Vukovich and defendant.

The intended record here is adequate to establish a prima facie case that forgery had occurred. The corpus delecti of a crime does not include the identity of the perpetrator. The crime having been established, the confession by defendant was properly admitted, thus adequately connecting defendant to the charges.

The trial court premised his dismissal of the information upon an alleged unfairness of the preliminary hearing. The prosecution would like to separate any error occasioned during the establishment of the embezzlement count from the forgery counts. We do not believe there was error, hence, we do not separate the two for consideration.

Contrary to defendant's responsive brief, the People do not concede that there was unfairness in the preliminary hearing procedure. Nor is there any disagreement on the legal principle, if the magistrate errs in improperly ruling on the admissibility of evidence, a motion to dismiss under section 995 of the Penal Code will lie. (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304].)

As we have stated, we find no error in the way the magistrate proceeded in the instant case. Here, copies of bank and church records were used in lieu of originals. As the preliminary developed, the best evidence objection, so far as the preliminary hearing was concerned, was waived. The original documents were made available to counsel and court but not themselves removed from the custody of either the church or bank. There was no complaint that this manner of proof was in any way disadvantageous or unfair to defendant. To say that the prosecution must connect up every piece of evidence before it can be marked for identification is unrealistic in the extreme for it would mean a veritable musical chair presentation of witnesses in a case such as that before us. We have examined the authorities referred to by both sides. The cases criticizing the procedure used by the magistrate here are not in point. In each case the unfairness resulted in production of evidence *to a jury* before the court ruled on its admissibility. Here, there was no jury trial, it was a preliminary hearing.

Before the admission into evidence of the items theretofore marked for identification, the court heard argument and even considered a brief which had been filed by the defendant. The objections were all the same or substantially the same and the delayed ruling in no way prejudiced the defendant. As stated in *People* v. *Bowen* (1971) 22 Cal.App.3d 267, 292 [99 Cal.Rptr. 498]: "[In a jury trial] [i]f a question is raised as to the relevancy, competency or prejudicial effect of an item of evidence which is prejudicial in nature, it is absurd to exhibit it to the jury before the question of its admissibility is resolved. In many instances, where there is merely delay in laying a full foundation, no prejudice can result, but at least the exhibition of the article should be prefaced with an offer of proof of the facts which will authorize its admission."[1]

[1]The court in *Bowen* ultimately ruled on the objection and admitted the evidence. Though critical of the court's manner of proceeding, it was held that there was no error.

The analysis of *Bowen* recognizes the propriety of proceeding exactly as the preliminary magistrate did in the instant case. There was no error and there was no unfairness or prejudice of any kind.[2]

We recognize the difficulty in multiexhibit embezzlement cases both from the prosecution's as well as the defense's point of view. We also recognize the difficulty posed upon the magistrate. The record here establishes loudly and clearly that fairness was uppermost in the magistrate's mind.

The dismissal is reversed.

Feinerman, P. J., and Hastings, J., concurred.

---

[2]The conclusion reached in *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941] must be noted: "We believe the time has come to consider and to discard the *Elliot* rule. Henceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects. We follow this approach in other contexts. In *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], for example, we held that denial of defendant's right to trial within a prescribed statutory time period was not reversible error on appeal in the absence of a showing of prejudice. If the issue is raised before trial, however, prejudice is presumed and the information is dismissed. (See also *People* v. *Welch* (1972) 8 Cal.3d 106, 113 [104 Cal.Rptr. 217, 501 P.2d 225], and *People* v. *Salas* (1972) 7 Cal.3d 812, 818-819 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832] [denial of motions to change venue]; also, *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401], where error in refusing representation by attorney of choice, correctable on pretrial application (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750]), was held to compel reversal after judgment only upon a showing of prejudice)."