180 Cal.App.3d 13 (1986)
225 Cal. Rptr. 323
THE PEOPLE, Plaintiff and Respondent,
v.
JAMES FLINT, Defendant and Appellant.
Docket No. A027832.
Court of Appeals of California, First District, Division One.
April 21, 1986.
*16 COUNSEL
Marisa Nayfach, under appointment by the Court of Appeal, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Martin S. Kaye and Cynthia Choy Ong, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ELKINGTON, J.
A jury found defendant Flint guilty of first degree "residential" burglary, and the trial court thereafter found that he had previously been convicted, September 29, 1975, of "a serious felony, to-wit: Burglary *17  1st degree [of a residence], in violation of Section 459 of the Penal Code, within the meaning of Penal Code Sections 667 and 1192.7." He appeals from the judgment entered on the jury's verdict and the trial court's finding.
The judgment will be affirmed. Our reasons follow.
We consider the several appellate contentions in the order stated, and as framed, by Flint.

I. Contention: "The lower court erred in denying appellant's Penal Code section 995 motion."
(1) It is argued that "there was no evidence presented at the preliminary examination [our italics] to connect appellant to the burglary."
No contention appears that at Flint's superior court trial there was not substantial evidence supportive of the jury's verdict of guilt.
Flint relies on the rule announced by People v. Elliot (1960) 54 Cal.2d 498, 503 [6 Cal. Rptr. 753, 354 P.2d 225], holding, "[W]here it appears that, during the course of the preliminary examination, the defendant has been denied a substantial right, the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion.... It is also settled that, if the defendant has not been legally committed and if the trial court erroneously denies the motion to set the commitment aside and permits the action to proceed to judgment, the resulting conviction must be reversed.... The theory ... is that where the accused is not legally committed within the meaning of section 995 of the Penal Code, the commitment is voidable. Upon proper objection, the superior court has no jurisdiction to proceed. It is the same as if no preliminary examination at all had been held, and is analogous to the situation where no evidence to connect the accused with the crime is introduced at the preliminary examination. In such event, of course, the information must be quashed."
But thereafter the high court in People v. Pompa-Ortiz (1980) 27 Cal.3d 519, 529 [165 Cal. Rptr. 851, 612 P.2d 941], held: "We believe the time has come to reconsider and to discard the Elliot rule. Henceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. *18 At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects." (Our italics.) And to the same effect see People v. Alcala (1984) 36 Cal.3d 604, 628 [205 Cal. Rptr. 775, 685 P.2d 1126]; People v. Vuksanovich (1982) 136 Cal. App.3d 65, 75, fn. 2 [185 Cal. Rptr. 842]; People v. Hampton (1981) 116 Cal. App.3d 193, 198-199 [172 Cal. Rptr. 25]; People v. Chambers (1980) 108 Cal. App.3d 985, 990-991 [166 Cal. Rptr. 815].
It will be noted that under People v. Pompa-Ortiz, supra, 27 Cal.3d 519, the sole remedy of one situated as Flint claims to have been, is by pretrial "application for extraordinary writ." Here Flint does not appear to have sought such a timely writ.
(2) A related argument is that: "The superior court employed an incorrect standard of review in ruling upon appellant's Penal Code section 995 motion."
The argument springs from the superior court's statement that "it was bound by the magistrate's finding." The magistrate had found probable cause to conclude that the burglary had been committed by Flint. The superior court was bound by that finding if it was supported by the evidence. (See People v. Hall (1971) 3 Cal.3d 992, 996 [92 Cal. Rptr. 304, 479 P.2d 664].) If it was not supported by the evidence, Flint's exclusive remedy was by timely application for an appropriate extraordinary writ, as pointed out by People v. Pompa-Ortiz, supra, 27 Cal.3d 519, 529, and its related cases. Having failed to seek that remedy, Flint may not here complain.

II. Contention: "The in-field identifications were unreliable and should therefore have been suppressed."
(3) Flint argues: "It has been held that a single person showup is not necessarily unfair.... On-the-scene showups for identification purposes aid in quickly exonerating the innocent and discovering the guilty.... However, it has also been pointed out that a single person showup is a highly suggestive procedure." He then insists that because three "infield" witnesses could not identify him "from the front" or "did not get a good look at the face of the man," that the "three identifications were grossly unreliable in a very suggestive setting."
It is true that the witnesses had difficulty in identifying Flint by his facial features, but those shortcomings were made clear to the jury and were manifestly considered by them. However, the witnesses did identify Flint as the burglar by his clothing, posture, build, hairstyle, and race; there was nothing inherently unreliable about the identifications, as made by the witnesses. *19 And surely the in-field identification evidence, such as it was, was relevant and otherwise admissible. It should not have been suppressed, as is argued for by Flint.
Elsewhere, we find evidence that immediately upon the departure of the burglar the police were called. And around that point one of the "in-field" witnesses had seen a stranger leave the area of the burglarized building, and walk rapidly away. The police soon arrived and the witness told them "that a black man wearing a brown leather jacket, blue jeans, brown heavy boots with a medium natural had just left his alleyway about a minute ago." And the witness pointed to the direction of the man's departure. The police car with the witness then drove off in pursuit. Soon the witness saw a man, and said, "that could be him." As the police vehicle drove toward the man, he looked in the direction of the patrol car. "He immediately turned around, took off the brown leather jacket that he was wearing, and walked at a fast pace towards the bushes into the ravine area." When the man entered the bushes the police started a chase which ended by a police officer with a drawn service revolver ordering him to stop. Soon at an "in-field" identification, each of the three witnesses identified the man in the above-described manner. The man was defendant Flint, and in his pockets were found "some money, the denominations of one $20 bill, one $5 bill, five $1 bills, and $3.42 in small change and one foreign coin." (Our italics.) One of the burglary victims reported, and later testified, that among the stolen items was a purse containing "a $20 bill, $5 bill and 5 ones and some change"; and a "foreign coin" also was stolen. And the clothing and general appearance of Flint answered the burglar's descriptions as given by the in-field witnesses.
We deem the evidence of Flint's guilt to be strong, and Flint's argument that the in-field identification of him was "grossly unreliable in a very suggestive setting" to lack merit.

III. Contention: "The court erred in giving CALJIC No. 2.03 and 2.71."
(4) The criticized instructions follow:
CALJIC No. 2.03: "If you find that before this trial the defendant made false or deliberately misleading statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstance tending to prove a consciousness of guilt but it is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and its significance, if any, are matters for your determination."
CALJIC No. 2.71: "A statement made by a defendant other than at his trial may be an admission. An admission is a statement by a defendant, *20 which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence. You are the exclusive judges as to whether an admission was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true. Evidence of an oral admission of the defendant ought to be viewed with caution."
Upon his arrest, Flint was asked where he lived, and answered that he lived in San Francisco, on the relatively nearby Haight Street. The statement was false, for he later admitted that he lived in Sacramento.
Flint relies on authority holding that to warrant the giving of CALJIC No. 2.03 such false statement must pertain to "the charge being tried," and that CALJIC No. 2.71 should be given only where the admission "tends to prove guilt." We opine that the statement of Flint that he lived nearby and thus had a reason other than burglary to be in the neighborhood, reasonably had some relevant bearing, although slight and remote, on the issue of his guilt. We accordingly observe no error.
But here, arguendo, were we to find the claimed error, we should be obliged to declare it harmless under the criteria of the state's Constitution, article VI, section 13, People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243], and Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].

IV. Contention: "It was error to impose a five-year enhancement pursuant to Penal Code section 667."
(5a) Here the argument is that Penal Code section 667, by its terms, applies only to prior convictions of serious felonies "on charges brought and tried separately," and that the record shows that Flint's prior serious felony conviction was based on a charge to which he pleaded guilty. Therefore, he insists, the trial court erred in applying section 667's enhancement to him.
We are unpersuaded. (6) The purpose of the language, "prior conviction on charges brought and tried separately" is to disallow imposition of the statutory five-year enhancement for each of several crimes committed in one criminal escapade. Or as stated by Mr. Witkin (2 Witkin, Cal. Crimes (1963) § 1008, p. 956), the words do not apply where several prior convictions "are based on several counts of a single accusatory pleading." And see People v. Gump (1936) 17 Cal. App.2d 221, 223 [61 P.2d 970].
*21 (7) It is settled that a plea of guilty "is itself a conviction." (People v. Stanworth (1974) 11 Cal.3d 588, 606 [114 Cal. Rptr. 250, 522 P.2d 1058]; In re Williams (1969) 1 Cal.3d 168, 175 [81 Cal. Rptr. 784, 460 P.2d 984]), and the "equivalent of a conviction" (People v. Ward (1967) 66 Cal.2d 571, 574 [58 Cal. Rptr. 313, 426 P.2d 881]). Such a guilty plea is "satisfactory evidence upon which to convict and will support a judgment that [the defendant] is an habitual criminal." (In re Gilliam (1945) 26 Cal.2d 860, 866 [161 P.2d 793]; In re Valenzuela (1945) 71 Cal. App.2d 198, 200 [162 Cal. Rptr. 301].) And: "[A] plea of guilty, is the highest kind of conviction which the case admits, and submits him to precisely the same punishment as if he were tried and found guilty by a jury." (People v. Hickman (1928) 204 Cal. 470, 476 [268 P. 909].)
(8) Moreover: "The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provision considered as a whole." (Silver v. Brown (1966) 63 Cal.2d 841, 845 [48 Cal. Rptr. 609, 409 P.2d 689]; and see, People v. Hannon (1971) 5 Cal.3d 330, 338 [96 Cal. Rptr. 35, 486 P.2d 1235]; Pacific Gas & Elec. Co. v. Morse (1970) 6 Cal. App.3d 707, 712 [86 Cal. Rptr. 7]; In re Kernan (1966) 242 Cal. App.2d 488, 491 [51 Cal. Rptr. 515].)
(5b) And in the construction of statutes: "When faced with a statute reasonably susceptible of two or more interpretations, of which at least one raises constitutional questions, we should construe it in a manner that avoids any doubt about its validity." (Association for Retarded Citizens v. Department of Developmental Services (1985) 38 Cal.3d 384, 394 [211 Cal. Rptr. 758, 696 P.2d 150].) Were we to give effect to Flint's argument that his conviction of a serious felony by guilty plea exempts him from Penal Code section 667's enhancement, while one otherwise similarly situated whose conviction is by jury verdict is not so exempted, serious doubt whether the latter is denied equal protection of the laws, would exist. (See In re Gary W. (1971) 5 Cal.3d 296, 303 [96 Cal. Rptr. 1, 486 P.2d 1201].) We construe Penal Code section 667 "in a manner that avoids doubt about its [constitutional] validity."

V. (9) Contention: "Proposition 8 did not divest the courts of the power to strike prior convictions as enhancements."
The contention is a correct statement of the law. (See People v. Fritz (1985) 40 Cal.3d 227 [217 Cal. Rptr. 460, 707 P.2d 833], passim.) (10) Here it appears that a motion was made by Flint, at least informally, to strike the Penal Code section 667 prior conviction. Defense counsel, arguing the motion, stated: "What I am asking the court to do is use all of the *22 circumstances in aggravation to give him the aggravated term and thereby precluding the court from giving him the five years in addition." And the court in denying the motion appeared to be exercising its discretion. (See Evid. Code, § 352; People v. Castro (1985) 38 Cal.3d 301 [211 Cal. Rptr. 719, 696 P.2d 111], passim.) In the absence of a contrary indication, it will reasonably be presumed that such discretion was exercised. (See Ross v. Superior Court (1977) 19 Cal.3d 899, 913 [141 Cal. Rptr. 133, 569 P.2d 727]; People v. Giminez (1975) 14 Cal.3d 68, 73 [120 Cal. Rptr. 577, 534 P.2d 65]; People v. White (1981) 117 Cal. App.3d 270, 280 [172 Cal. Rptr. 612]; rule 409, Cal. Rules of Court.)
The judgment is affirmed.
Racanelli, P.J., and Holmdahl, J., concurred.