[No. F006789. Fifth Dist. June 22, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDY HARRIS, Defendant and Appellant.

**[Opinion certified for partial publication.‡]**

‡ Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Alan M. Caplan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jane N. Kirkland and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BALLANTYNE, J.—**

### INTRODUCTION

Rudy Harris appeals from his conviction by a jury of the robbery (Pen. Code, § 211a) and the attempted robbery of two taxicab drivers.[1] The defendant was also found guilty of using a deadly weapon (Pen. Code, § 12022, subd. (b)) under each count. After the verdicts were announced, the defendant voluntarily waived further trial and admitted each of two prior robbery convictions set forth in the first amended information. Harris was sentenced to the four-year middle term for robbery with a one-year enhancement for the use of a deadly weapon, eight months consecutive

---

[1] Penal Code section 211a was repealed and replaced with Penal Code sections 212.5 and 213 in 1986.

sentence for the attempted robbery and two five-year enhancements for each prior conviction.

The defendant contends that his sentence was improperly enhanced because his prior convictions were by plea at the same hearing and he was sentenced concurrently for those crimes. He further contends that he was inadequately assisted by counsel, that his request for a continuance for new counsel was improperly denied, and that he is entitled to the mitigated prison term. For the reasons discussed below, we find defendant's contentions to be without merit and affirm the judgment.

## FACTS

Randy Dean, a taxicab driver, was dispatched to 2385 South Ivy Street in Fresno at 3:20 a.m. on May 8, 1985. He was approached by the defendant who asked him to help carry some luggage from the apartment into the taxi. After Dean left the cab and approached the apartment, the defendant grabbed Dean by the throat and threatened him with a butcher knife. The defendant then pushed Dean face down against the ground.

The defendant threatened Dean's life demanding to know where the victim had left his keys and wallet. When Dean replied that they were in the cab, the defendant released Dean and told him to call the police. The defendant then said, "Don't forget to tell the police that the Phantom struck." Dean's keys and wallet containing $160 were missing from the cab glove box.

Cab driver Gary Boardman was dispatched to 2389 South Ivy Street around 2 a.m. on May 11, 1985. When Boardman arrived the defendant approached him asking for assistance with his grandmother's luggage. The defendant then grabbed Boardman's neck and held a butcher knife in the other hand. As with Dean, the defendant forced Boardman face down on the ground and threatened his life. The defendant took $30 from Boardman's shirt pocket and also the keys to his cab.

At 3 a.m. on the morning of the May 11, the dispatcher for the cab company that both Boardman and Dean worked for received a call requesting that a taxi be sent to 2381 South Ivy Street. The dispatcher notified the police. The police borrowed a taxi pursuant to an earlier agreement with the company. Both the taxi and an unmarked patrol car were sent to South Ivy Street. When they arrived the police saw a man matching the suspect's description. The man turned and ran as soon as he saw the unmarked car. He was captured and later identified by both victims. The police recovered a

butcher knife and other distinctive evidence close to where the defendant was first seen at the apartments before he fled.

The defendant was represented by Michael Feinberg of the public defender's office. Because he was being hospitalized, Mr. Feinberg did not represent the defendant at the preliminary hearing. The defendant was represented by another member of the public defender's office at that stage. The defendant's trial was later continued one week because of a death in Mr. Feinberg's family. Based on these facts and the fact that Mr. Feinberg would not file a motion to suppress evidence of the crimes, the defendant filed a motion challenging the competency of defense counsel pursuant to *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]. The *Marsden* motion was made on the second day of trial after the jury had been impaneled.

The police testified that the defendant gave them his girlfriend's address and that both he and she consented to a search of her apartment. The police found incriminating evidence from the crimes, including the belongings of one of the cab drivers. When he testified, the defendant denied ever giving the police his girlfriend's address. Instead, he claimed that he lived with his brother in a different part of town. Mr. Feinberg declined to file the suppression motion because he felt that the defendant lacked standing to bring the motion and because dominion over the stolen items would remain cloudy if the defendant did not claim a possessory interest in the apartment.

The reasons the defendant articulated for substituting his counsel at the *Marsden* hearing were: (1) counsel's absence at the preliminary hearing; (2) counsel's inability to concentrate on defendant's case after the recent family death; (3) counsel's refusal to file the suppression motion; (4) counsel's inability to locate and subpoena any defense witnesses; and (5) the defendant's lack of trust in his counsel. The trial court denied the *Marsden* motion and a related motion to continue the action for substitution of counsel.

On April 27, 1978, the defendant had pled guilty to robbery in two separate cases involving separate crimes. The defendant pled guilty in each case at the same time and was sentenced in each case at the same time. His sentences were concurrently served.

## DISCUSSION

### I.

### ENHANCEMENTS FOR PRIOR CONVICTIONS

██ The defendant argues that because both prior sentences ran concurrently, and because the charges were brought at the same time, that the two

prior convictions were not tried separately and they should count as only one conviction. Penal Code section 667, subdivision (a), permits one consecutive five-year enhancement for each prior conviction "brought and tried separately."[2]

The issue presented here is whether the defendant's two prior convictions were tried separately or together. The statutory clause under interpretation is written in the conjunctive, not the disjunctive. To enhance a recidivist's sentence, each prior conviction must be brought separately and then tried separately. If the underlying convictions were tried *together*, then the statute expressly forbids a second five-year enhancement.

*People* v. *Flint* (1986) 180 Cal.App.3d 13 [225 Cal.Rptr. 323] held that a guilty plea could still be used as an enhancement even though a plea is not technically a "trial." The *Flint* court reasoned that a guilty plea is a conviction and that the purpose of the statute is to deter habitual criminals. The *Flint* court found that a plea of guilty did not remove the defendant from the provisions of Penal Code section 667, subdivision (a), merely because there was no trial and jury verdict. The court concluded that to treat criminal defendants who plead guilty differently from those who are tried would violate equal protection of the laws. (180 Cal.App.3d at pp. 20-21.)

*Flint* is not directly on point with the instant action. It is helpful because it holds that a guilty plea is equivalent to a trial. It does not, however, confront the question of what the word *separately* signifies. The defendant here pled guilty to two different actions with different case numbers. There is no question that the two actions were *brought* separately.

---

[2]Penal Code section 667 provides: "(a) In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively.

"(b) This section shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment. There is no requirement of prior incarceration or commitment for this section to apply.

"(c) The Legislature may increase the length of the enhancement of sentence provided in this section by a statute passed by majority vote of each house thereof.

"(d) As used in this section 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7.

"(e) The provisions of this section shall not be amended by the Legislature except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors." The first clause of section 667, subdivision (a), ending with the first comma, was added to the statute by urgency amendment effective May 6, 1986. The change does not affect our analysis of subdivision (a).

*People* v. *Gump* (1936) 17 Cal.App.2d 221 [61 P.2d 970] confronted the problem of whether one conviction on three separate counts qualified a defendant as a habitual criminal under the enhancement provisions of old Penal Code section 644. That section permitted enhanced sentencing for criminal defendants convicted three times previously " 'upon charges separately brought and tried, and who shall have served separate terms.' " The *Gump* court found that the three counts were related to one criminal incident for which the defendant could serve only one concurrent sentence. The court concluded that section 644 did not apply to Gump because the express terms of the statute required separate trials and separate prison terms. Gump's three counts were tried together and his conviction on each count could not be punished with separate sentences. (17 Cal.App.2d at pp. 223-224.)

This action is distinguishable from *Gump* in two important ways. First, section 667, subdivision (a), is worded differently from old section 644. Unlike section 644, section 667, subdivision (a), does not require separate actions and separate prison terms. Section 644 was facially more restrictive in its scope because it could only be applied where there were both separate actions *and* separate sentences. Section 667, subdivision (a), is broader in scope and applies to a larger class of criminal conduct because it is not limited by the type of sentence imposed. Thus, the fact that Gump was concurrently sentenced was relevant there. Here, the fact that the defendant was concurrently sentenced for the two priors does not have any bearing under the terms of section 667, subdivision (a), itself.

Second, the *Gump* case involved one single trial. Although there were three separate counts, each count involved the same criminal incident. Here, the defendant's prior convictions were based upon two separate incidents under two separate case numbers. With regard to the prior convictions, the sentencing judge found, "They are tried separately and imposed separately apparently [*sic*] he he [*sic*] had gotten concurrent time the last time on the two cases where he was convicted."

Here, unlike *Gump,* the sentencing court expressly found that the defendant had been tried separately when he pled guilty to robbery in 1979 to each different robbery case. There is nothing in the record before us to indicate that the two prior robbery cases were not tried "separately." There is no evidence, for instance, that the cases were consolidated prior to the defendant's plea. Although the pleas were taken at the same time and the defendant was sentenced on the same day, these facts alone cannot overcome the sentencing judge's finding that the two cases were tried separately.

The mere fact that a sentence is served concurrently does not necessarily mean that it was part of a single course of conduct. Where a defendant has

multiple criminal objectives, as here, he can be prosecuted separately for each such incident without violating Penal Code section 654's prohibition against multiple punishment. (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].)

The two underlying robbery cases were brought separately and, from the record, were tried separately. The defendant pled guilty to each case. He admitted each prior conviction during this action after waiving his right to a trial on the issue of the validity of the two prior convictions. Absent a showing that the two underlying actions were consolidated or otherwise tried together as one case, there is no basis to conclude that they were tried together. The sentencing court's use of both five-year enhancements was proper.

II., III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Martin, Acting P. J., and Best, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 23, 1987. Arguelles, J., was of the opinion that the petition should be granted.

---

* See footnote, *ante,* page 1197.