[No. D007960. Fourth Dist., Div. One. Mar. 27, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE LEE THOMAS, Defendant and Appellant.

COUNSEL

Howard J. Specter, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Nancy L. Palmieri, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**TODD, J.**—A jury found Willie Lee Thomas guilty of attempted murder with personal use of a firearm and intentional infliction of great bodily injury (Pen. Code, §§ 664, 187, 12022.5, 12022.7),[1] possession of a weapon by an ex-felon (§ 12021, subd. (a)) and six counts of armed robbery with personal use of a firearm (§§ 211, 12022.5). The jury was unable to reach verdicts on one additional count of robbery and one count of attempted robbery. The trial court declared a mistrial as to those two counts. Thomas waived his right to trial by jury on allegations he had two serious prior

---

[1] All statutory references are to the Penal Code unless otherwise specified.

felony convictions (§§ 667, subd. (a), 1192.7, subd. (c)(8), (19)) and, after a separate trial by the court, those allegations were found true.

Thomas appeals after the trial court sentenced him to an aggregate term of 34 years, 8 months in prison, including an upper, principal term of 9 years for the attempted murder and two 5-year enhancements for the serious prior felony convictions. Thomas contends he is entitled to a reversal based on the trial court's (1) denial of his motion to sever the attempted murder and ex-felon in possession of a firearm counts from the remaining robbery counts, (2) refusal to suppress his initial statement to police, (3) failure to instruct on defense of others, (4) giving inconsistent and confusing instructions on imperfect self-defense, (5) imposing two enhancements for the serious prior felony convictions which were not brought and tried separately and (6) relying on improper aggravating factors in selecting the upper term for the attempted murder conviction. We find Thomas's contentions unmeritorious and affirm the judgment.

## FACTS

The last two crimes Thomas committed, attempted murder and being an ex-felon in possession of a firearm, were the first two with which he was charged. Those crimes occurred between 1:30 and 2 a.m. on July 20, 1987, after Thomas left a bar that closed for the night, had a verbal altercation with Kevin Bowman just outside the bar, retrieved a loaded handgun he had left in a nearby truck and moments later shot Bowman while the vehicle in which Thomas rode and Bowman's vehicle were stopped at a signal.

At about 7:30 p.m. on July 19, 1987, Thomas and three friends went out "partying." On the way to the Trophy Lounge in National City Thomas fired three shots into the air from the bed of the pickup truck in which he rode. When the group arrived at the Trophy Lounge Thomas left the gun inside the truck at the request of the driver, Matthew Weller. Inside the Trophy Lounge Weller sat with Denise Shive who was the object of several rude and vulgar comments by another patron at a nearby table. On occasion Thomas visited with another female at the table where Weller and Shive sat, and he was aware of the remarks being directed at Shive who was upset by them. Neither Bowman nor his companion, James Golinvaux, had any contact with Thomas inside the Trophy Lounge. Nor was either of them the person who directed the remarks at Shive.

At about 1:30 a.m., as the bar was closing and the crowd began to leave, the man repeated his vulgar remarks to Shive who slapped the man in the face. Outside the bar Bowman and Golinvaux were walking toward

Bowman's truck when Shive heard someone say "bitch" or "fat bitch." Shive turned and slapped Bowman in the face. Shive's female friend similarly struck Golinvaux. At this point Thomas told Bowman, "You don't belong here. This is not any of your concern. Move on." When Bowman pointed out he was on a public sidewalk, Thomas said, "I ought to kick your ass right here and now." As Thomas was threatening Bowman that he had "something for you later," a police officer arrived and broke up the confrontation.

Thomas retrieved his gun from Weller's truck and returned to the front of the Trophy Lounge, telling Weller he had to "take care of it . . . ." Thomas refused Weller's offer of a ride home and got into the front passenger's seat of a car driven by Freda Muller. Kenneth Childs and Ruth Barr rode in the back of the car.

As Bowman's pickup truck was stopped for a signal, the car in which Thomas was riding pulled up to the left of Bowman's driver's side, slightly forward of it and stopped. Thomas asked Bowman what he was looking at and pointed the gun at Bowman. Bowman got out of his truck to try to get out of the line of fire and began walking backward toward the left rear wheel of the truck. Thomas then fired his gun, shooting Bowman in the abdomen and causing great bodily injury.[2] The car in which Thomas was riding drove away.

On July 21, 1987, officers arrested Thomas in connection with a parole search of his residence during which they found his gun under a cushion of an armchair.

Between April 25 and May 19, 1987, using a gun several witnesses identified as the same as or similar to the gun he used to shoot Bowman, Thomas robbed desk attendants at six motels.

DISCUSSION

I

██ Thomas contends the trial court's denial of his motion to sever the attempted murder and ex-felon in possession of a firearm counts from the robbery counts constituted prejudicial error. In ruling on the motion, the trial court cited a case recently decided by this court, *People* v. *Crosby*

---

[2] The bullet entered and exited Bowman's body and caused an injured bowel. Bowman underwent exploratory surgery which left an eight-inch scar on his abdomen. At the time of the trial Bowman was having digestive problems as a result of the shooting.

(1988) 197 Cal.App.3d 853 [243 Cal.Rptr. 158], and stated in part: "[T]here is cross-admissibility of the evidence in this case. In particular, I find that in the robbery counts wherein the defendant, Mr. Thomas, is alleged to have used a pistol, and according to Mrs. O'Mara [Prosecutor], a number of the victims have viewed the pistol found in the defendant's joint residence and have identified it as being the same weapon as was pointed at them and used upon them in the commission of the robbery, that that use of the weapon on the attempted murder and the possession of the defendant of that weapon on that day would be admissible to prove the identify [sic] of the defendant as well as the use allegation in all of the robbery convictions.

"As the *Crosby* court, Justice Benke I believe writing the opinion, pointed out: If the evidence in the joint case is not cross-admissible, then the court must evaluate, number one, the inflammatory nature of the evidence supporting the joined defenses; the relative weaknesses and strengths of the evidence to be offered on the joined defenses; three, the benefits to be derived from the joinder; and four, whether any of the offenses can be punished with death.

"Well, obviously number four is out because this is not a death penalty case. There are substantial benefits to be derived from a joinder of these offenses; namely, the number of cross-witnesses that would be necessary in a separate trial.

"Number two, the relative weaknesses and strengths of the evidence to be offered on the joined offenses, and I kind of disagree with Mrs. O'Mara's characterization, I think, that the offenses appear to be relatively strong in relation to each other.

"Number one, the inflammatory nature of the evidence supporting the joined offenses, and I think the question really is whether or not a jury can make the distinctions between attempt [sic] murder and the robberies, and I think under proper instructions from the court they can.

"I further find, as I think I've indicated, that there is cross-admissibility of evidence between the offenses."

Here, there is no question the offenses were properly joined under the same accusatory pleading. The offenses charged pertained to the "same class of crimes," (§ 954) being assaultive crimes against the person, and were properly joined. (*People* v. *Walker* (1988) 47 Cal.3d 605, 622 [253 Cal.Rptr. 863, 765 P.2d 70].) " 'Since the statutory requirements for joinder were clearly met in this case, [defendant] can predicate error only on clear

showing of prejudice.' " (*Ibid.*, quoting *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 447 [204 Cal.Rptr. 700, 683 P.2d 699].)

▄▄▄ On the matter of showing prejudice, " '[a] bald assertion of prejudice is not enough.' " (*People* v. *Balderas* (1985) 41 Cal.3d 144, 171 [222 Cal.Rptr. 184, 711 P.2d 480], quoting *People* v. *Kemp* (1961) 55 Cal.2d 458, 477 [11 Cal.Rptr. 361, 359 P.2d 913].) "No abuse of discretion in denying severance will be found absent that showing in the trial court." (*People* v. *Bean* (1988) 46 Cal.3d 919, 939, fn. 8 [251 Cal.Rptr. 467, 760 P.2d 996].) More recently, the general rule was reiterated in *Frank* v. *Superior Court* (1989) 48 Cal.3d 632, 636 [257 Cal.Rptr. 550, 770 P.2d 1119], which drew the conclusion: "Applying general principles of law applicable to the severance of counts and recognizing that it is the burden of the defendant to clearly show potential prejudice in the joinder (see *Bean, supra*, 46 Cal.3d 919, 939), we conclude that the trial court did not abuse its discretion in ruling against severance."

▄▄▄ Here, we draw an identical conclusion. It must be kept in mind that we must evaluate motions for severance in light of the showings made and the facts known at the time of the motion. (*People* v. *Balderas, supra*, 41 Cal.3d 144, 171.) Viewed in this light, the trial court's analysis covering both the cross-admissibility aspect and the various factors going to whether there was a prejudicial abuse of discretion demonstrates Thomas made no clear showing of prejudice and no such abuse of discretion occurred. *Frank* teaches: "The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial. Thus, refusal to sever may be an abuse of discretion where '(1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all; and (4) any one of the charges carries the death penalty.' (*People* v. *Balderas* (1985) 41 Cal.3d 144, 173 [222 Cal.Rptr. 184, 711 P.2d 480].)" (*Frank* v. *Superior Court, supra*, 48 Cal.3d at p. 639.)

*Frank* also establishes that the trial court's discretion under section 954 to deny severance is broader than its discretion to admit evidence of uncharged crimes under Evidence Code section 1101. (48 Cal.3d at p. 639.) As we read *Frank*, a strict application of rules concerning the admissibility of uncharged crimes is not called for when considering severance. In this regard, *Frank* quotes at length from *People* v. *Bean, supra*, 46 Cal.3d 919, 938-939, which explains the distinction in the severance motion situation, in

part: " 'When the offenses are joined for trial the defendant's guilt of all the offenses is at issue and the problem of confusing the jury with collateral matters does not arise. The other-crimes evidence does not relate to an offense for which the defendant may have escaped punishment. That the evidence would otherwise be inadmissible may be considered as a factor suggesting possible prejudice, but countervailing considerations that are not present when evidence of uncharged offense[s] is offered must be weighed in ruling on a severance motion. The burden is on the defendant therefore to persuade the court that these countervailing considerations are outweighed by a substantial danger of undue prejudice.' " (See *Frank, supra*, 48 Cal.3d at p. 640, quoting *People* v. *Bean, supra*, 46 Cal.3d at p. 939.)

■ Thus, if application of rules of admissibility of uncharged crimes to the other crimes in the severance motion situation results in a conclusion the evidence would be inadmissible, this is but a factor suggesting possible prejudice. That factor must be weighed against countervailing considerations not present when evidence of uncharged offenses is offered. (*Frank, supra*, 48 Cal.3d at p. 640.) Always, it is the defendant's burden to persuade the trial court that these countervailing considerations are outweighed by a substantial danger of undue prejudice. (*Ibid.*) "[T]he first step in the analysis is to determine whether the evidence in each case would be admissible in the other. Such cross-admissibility would ordinarily dispel any inference of prejudice." (*People* v. *Walker, supra*, 47 Cal.3d 605, 622.)

■ Here, the trial court correctly determined the evidence concerning the firearm would be cross-admissible on all the charges, thus dispelling any inference of prejudice. Nevertheless, Thomas argued that he was concerned with the effect on the jury of the strong evidence in the robbery cases as having a carry-over effect on the attempted murder charge. The prosecutor labeled Thomas's argument as conjecture and speculation. It is apparent from the record, however, that the trial court weighed the relevant factors and properly came down on the side of nonseverance. As in *Bean, supra*, 46 Cal.3d 919, 939, this was "not a case in which, at the time the ruling was made, the evidence of defendant's guilt of one or more of joined offenses was weak, while the evidence of the other was strong. And neither offense was particularly inflammatory in comparison with the other. There was substantial evidence of defendant's involvement in each." (Fn. omitted.)

Thomas did not clearly demonstrate prejudice, rather only a possibility the jurors might look unkindly upon him as a result of the evidence of the robberies. That is not a sufficient showing. There was no abuse of discretion in denying Thomas's severance motion.

## II

■ Thomas contends that due to the fact he was not advised of his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), his initial statement to the police should have been suppressed. On July 21, 1987, Officer John Murray of the National City Police Department went to Thomas's apartment to conduct a parole search. Murray told Thomas to stand in the middle of the room and to keep his hands where they could be seen. Murray told Thomas "we weren't going to play games. We weren't going to take any chances because we were there investigating an attempted murder, looking for evidence in that attempted murder." Neither Murray nor any other officer questioned Thomas.

When Murray found the handgun he arrested Thomas who said Murray had the "wrong person . . . he wasn't even out of apartment on that night." At this point Murray told Thomas that "he was identified as being there by me seeing him on a video tape at a bar a few blocks away from the shooting."

It is elementary that *Miranda* warnings are required only when a suspect is interrogated, which involves express questioning or its functional equivalent. (*Arizona* v. *Mauro* (1987) 481 U.S. 520, 525-527 [95 L.Ed.2d 458, 465-466, 107 S.Ct. 1931, 1934-1935]; *Miranda, supra*, 384 U.S. at pp. 444, 478 [16 L.Ed.2d at pp. 706-707, 726].) Here it is clear there was no attempt by the officer to elicit information from Thomas before he volunteered and gratuitously interjected the statement. Thus, *Miranda* furnishes no basis for excluding the statement. (See *People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 470 [103 Cal.Rptr. 243, 499 P.2d 499].)

## III

■ Thomas contends the trial court's refusal to instruct the jury in the language of CALJIC No. 5.32 on the use of force in defense of another constituted prejudicial error. (See § 694, "Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense.")

■ The court is required to instruct the jury on every theory of the case, but only to the extent each is supported by substantial evidence. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 685 [160 Cal.Rptr. 84, 603 P.2d 1].) The court should not measure the substantiality of the evidence by undertaking to weigh the credibility of the witnesses, but if the evidence is minimal and insubstantial the court need not instruct. (*Id.* at p. 684.)

 This case falls in the minimal and insubstantial category in that the only witness whose testimony might be viewed as showing an aggressive posture on Bowman's part was that of Ruth Barr who admittedly was intoxicated, could not remember many details of the evening and was "kissing, we were busy, you know, playing, doing stuff." Barr's testimony was that at the intersection when the car stopped, "for some reason I looked through the window and I saw—I saw a face—I saw a shadow, something coming towards our car, and then I—and then I saw a face coming, you know, getting lower to the—the guy's windows, the black guy's side. [¶] And then right after that, in the few seconds after that I heard two noises, two firecrackers. That's when it woke me up. And then after those two noises that I heard, the face was out of my face—it was out of the window. That's all I remember."

This testimony does not amount to substantial evidence from which a reasonable person could form a belief "that bodily injury is about to be inflicted upon [a third person] . . . ." (CALJIC No. 5.32.) Nor does the addition of the hearsay statements attributed to Barr to the effect that she saw the person walk up to the car and press his face against the glass elevate Barr's testimony above the "minimal" level for purposes of considering the instruction on defense of third persons.

Since the defense of others instruction was not supported by substantial evidence, there was no error in refusing to give it.

## IV

 Thomas contends the trial court gave inconsistent and confusing instructions on imperfect self-defense. His theory is that in giving both of his requested instructions on imperfect self-defense, CALJIC No. 5.17,[3] and self-defense, when the danger ceases, CALJIC No. 5.52,[4] "it is highly likely the jury interpreted CALJIC 5.52 as applying to imperfect self-defense as well as ordinary self-defense." No other instruction differentiates between when the right to ordinary self-defense is available and when imperfect self-defense no longer applies. Thus, he argues, "[t]he jury likely reasoned that

___

[3] CALJIC No. 5.17, as given by the trial court, reads: "A person who attempts to kill another person in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury kills unlawfully, but does not harbor malice aforethought and cannot be found guilty of murder, in this case attempted murder. This would be so even though a reasonable man in the same situation seeing and knowing the same facts would not have had the same belief. Such an honest but unreasonable belief is not a defense to the crime of attempted voluntary manslaughter."

[4] CALJIC No. 5.52, as given by the trial court, reads: "The right of self-defense exists only as long as the real or apparent threatened danger continues to exist. When such danger ceases to appear to exist, the right to use force in self-defense ends."

when the real or apparent danger ceases, both regular and imperfect self-defense no longer apply."

Thomas himself requested the instructions as they were given, but did not request any amplifying instructions that might have removed the issue. "The trial court cannot reasonably be expected to attempt to revise or improve accepted and correct jury instructions absent some request from counsel." (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 108-109 [192 Cal.Rptr. 748, 665 P.2d 520]; see also *People* v. *Earnest* (1975) 53 Cal.App.3d 734, 744 [126 Cal.Rptr. 107].) In this context error cannot be found in the trial court's not having given the amplifying instruction.

Moreover, it is apparent that Thomas is relying on some unsubstantiated likelihood of the jury's point of view. Inasmuch as the given CALJIC No. 5.52 instruction speaks only to the matter of self-defense and the given CALJIC No. 5.17 instruction expressly states that the "honest but unreasonable belief is not a defense to the crime of attempted voluntary manslaughter," it is every bit as likely as Thomas's speculation that a jury would find by the terms of the instructions that neither has any bearing on the other. As Thomas recognizes, the "imperfect self-defense" instruction is not a self-defense instruction at all. It merely removes the element of malice aforethought, while making it clear the person holding the defined belief still "kills unlawfully." On the other hand the self-defense instructions given here start out with the words, "[i]t is lawful," thus showing the essential difference between the concepts on which the jury is being instructed.

Viewing the instructions on the two areas of defense strategy as the separate concepts they are, there is no inconsistency or confusion in the instructions the trial court gave.

## V

■ Thomas contends his two prior serious felony convictions were not brought and tried separately within the meaning of section 667, subdivision (a), and thus one of those enhancements must be stricken. The prior serious felony convictions involved Thomas's pleas of guilty entered on the same date in two separately filed cases that were not consolidated but were sentenced on the same date.

In case number CR65189 a felony complaint was filed September 23, 1983, and he was held to answer on October 6, 1983. An information was filed October 14, 1983, charging Thomas with four counts of robbery and

one count of attempted robbery. On December 19, 1983, a jury was selected and sworn, and the court recessed until January 3, 1984.

In case number CR66283 a felony complaint was filed November 28, 1983, and he was held to answer on December 29, 1983. An information was filed January 3, 1984, charging two counts of robbery.

On January 3, 1984, Thomas pled guilty to two counts of robbery in case number CR65189 and to one count of robbery with personal use of a firearm in case number CR66238. On June 11, 1984, judgment of conviction was entered on the three robberies during the same sentencing proceedings.

Section 667 provides in relevant part that "any person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement *for each such prior conviction on charges brought and tried separately.*" (Italics added.)

Recently, *In re Harris* (1989) 49 Cal.3d 131, 133 [260 Cal.Rptr. 288, 775 P.2d 1057], held "the phrase 'on charges *brought and tried separately*' requires that the charges underlying the prior 'serious felony' convictions must have been made in proceedings that were formally distinct." (*Id.* at p. 133.) In *In re Harris, supra*, a single felony complaint in the municipal court charged Harris with two robberies. After he was held to answer, two informations were filed each charging one of the robberies. Harris then pled guilty to the charges in each information and was later sentenced on each. Both the pleas and the sentencing occurred at the same time. (See *People* v. *Harris* (1987) 192 Cal.App.3d 1197, 1200 [238 Cal.Rptr. 31].)

*In re Harris* points out there is " 'no distinction between an adjudication of guilt based on a plea of guilt and that predicated on a trial on the merits.' " (49 Cal.3d at p. 135, quoting *People* v. *Ebner* (1966) 64 Cal.2d 297, 304 [49 Cal.Rptr. 690, 411 P.2d 578].) *In re Harris* goes on to conclude the phrase in question was derived from former section 644 defining and punishing habitual criminals and it should be given the same meaning as it had in section 644. (49 Cal.3d at pp. 135-136.) *In re Harris* then concludes: "[T]he requirement in section 667 that the predicate charges must have been 'brought and tried separately' demands that the underlying proceedings must have been formally distinct, from filing to adjudication of guilt. Here, as the record plainly reveals, the charges in question were not 'brought . . . separately,' but were made in a single complaint." (49 Cal.3d at p. 136.) Here, unlike the situation in *In re Harris,* separately filed felony complaints, each containing distinct charges, commenced the criminal proceedings against Thomas in the prior felony cases. In case number

CR65189 a jury trial commenced, with the jury selected and sworn before the court recessed. The mere fact the case was continued to January 3, 1984, when a plea bargain was reached in both case numbers CR65189 and CR667283, and guilty pleas were entered in the two cases, does not make the cases other than separately brought and tried. The same date for accepting the pleas in these nonconsolidated cases is of no significance for purposes of section 667. (See *People* v. *Lewis* (1987) 191 Cal.App.3d 1288, 1301 [237 Cal.Rptr. 64], "[t]he 'separately brought and tried' limitation of section 667, subdivision (a) does not bar multiple enhancements where convictions are based on unrelated counts of different accusatory pleadings.")

We note that in *People* v. *Deay* (1987) 194 Cal.App.3d 280, 286-290 [239 Cal.Rptr. 406], on which Thomas relies, "on December 29, 1982, in one proceeding, defendant pled guilty in the Redding Municipal Court to two counts of first degree burglary." (*Id.* at p. 286.) The language referring to "two counts" in one proceeding implies there was adjudicated but one accusatory pleading containing the two counts. This factor distinguishes *Deay* from Thomas's case where separate accusatory pleadings were adjudicated.

It is noteworthy that *In re Harris, supra,* 49 Cal.3d 131, does not criticize the holding of the Court of Appeal in *People* v. *Harris, supra,* 192 Cal.App.3d 1197, 1200-1203, that where the record shows more than one proceeding was separately initiated and not consolidated, as here, the fact the defendant pled guilty in the cases at the same time and was sentenced on the same day cannot overcome a finding the cases were tried separately. (*People* v. *Harris, supra,* 192 Cal.App.3d at p. 1202.) *In re Harris, supra,* 49 Cal.3d 131, 134, involving the same defendant on habeas corpus, found the facts were not as indicated by the record on appeal in that the prior cases were initiated by a single accusatory pleading followed by a single preliminary hearing after which they were prosecuted in the superior court under two separate informations. It was in this factual context that *In re Harris* determined only one five-year enhancement could be imposed under section 667, holding that "the charges underlying the prior 'serious felony' convictions must have been made in proceedings that were formally distinct." (*In re Harris, supra,* 49 Cal.3d at p. 133.)

Thomas's prior felony adjudications exactly fit this holding of *In re Harris, supra,* 49 Cal.3d 131. Accordingly, we find no basis for eliminating one of the section 667 enhancements.

## VI

■ Thomas contends the trial court relied on improper aggravating factors in selecting the upper term for the attempted murder count. He

argues that the findings the victim was particularly vulnerable and that the crime was premeditated are not supported and that the remaining factors in aggravation, a pattern of violent conduct indicating a danger to society and Thomas's crimes were increasingly serious, when considered against the mitigating factor of good performance on parole, make it reasonably probable that if one or both of the challenged factors are stricken he would not receive the upper term.

In finding aggravating factors, the court cited California Rules of Court, rule 421(a)(3),[5] and stated: " . . . Kevin Bowman the victim was particularly vulnerable, that he was unarmed and totally surprised by the defendant's conduct at the time and place the crime occurred. There's some dispute as to whether or not he was more vulnerable because of his state of intoxication. The evidence, I think, according to Mr. Bowman was he had been drinking. And I think the history of that, he had been drinking substantially. And, therefore, I consider it. However, I don't give it a great deal of weight."

After refusing to find two other aggravating circumstances present, the court discussed the remaining aggravating factors it found true, as follows: "I think there is some evidence that he premeditated based on what I earlier referred to as the testimony of Mr. Weller as well as the testimony of Childs, even though the jury found there was no deliberate —willful, deliberate and premeditated murder, therefore first degree murder. There certainly is sufficient evidence that he had evil intention in mind insofar as the victim Kevin Bowman was concerned having run to the car to get the gun. And I think quite frankly that were it not for the presence of the National City Police at that bar, he would have run back to that bar with that gun and we may have had a much more serious crime than he is now confronted with.

"Rule 421 paren (b) paren (1) and (2), the defendant engaged in a pattern of violent conduct which indicates a serious danger to society. These crimes are increasingly serious. I note his juvenile record starting in 1978 with the true finding for burglary going on to 1979. A true finding was made against the defendant again in 1979, another true finding and again for escape a true finding. And again in '79 another escape, a true finding. 1981, for grand theft of a gun. Apparently 487.3. Another true finding. And again in 1981 for 211, 496.1 and 10851 of the Vehicle Code. There's a true finding on [grand] theft person under 487.2."

Even assuming a lack of support for the two factors of particular vulnerability and premeditation, the record makes it clear that the remaining

---

[5] All references to rules are to the California Rules of Court. Rule 421(a)(3) lists as a circumstance in aggravation that "[t]he victim is particularly vulnerable."

factors of Thomas's engaging in a pattern of violent conduct indicating a serious danger to society and his convictions of increasing seriousness alone support the upper term and remove any reasonable probability of a more favorable sentence in the absence of the first two factors. (See *People* v. *Avalos* (1984) 37 Cal.3d 216, 233 [207 Cal.Rptr. 549, 689 P.2d 121]; *People* v. *Dreas* (1984) 153 Cal.App.3d 623, 636-637 [200 Cal.Rptr. 586]; and see *People* v. *Piceno* (1987) 195 Cal.App.3d 1353, 1360 [241 Cal.Rptr. 391].)

## DISPOSITION

The judgment is affirmed.

Work, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 1990. Broussard, J., was of the opinion that the petition should be granted.