Filed 11/26/25 P. v. Martinez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JORGE ALBERTO GUTIERREZ MARTINEZ,<br><br>    Defendant and Appellant. | F088432<br><br>(Super. Ct. No. BF196160A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. David R. Zulfa, Judge.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Lewis A. Martinez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Jorge Alberto Gutierrez Martinez was found guilty of attempted murder, two counts of assault with a firearm, false imprisonment, and two felon-in-possession counts. Defendant now appeals his conviction, asserting the trial court prejudicially erred by failing to instruct the jury on accident. Defendant also contends remand is warranted to reconcile an incongruency in his sentence as well as correct clerical errors in the abstract of judgment. The People dispute defendant's first contention and concede his second point.

Defendant's sentence is vacated and the matter is remanded for full resentencing. In all other respects, the judgment is affirmed.

## PROCEDURAL HISTORY

On June 24, 2024, the Kern County District Attorney filed a second amended information charging defendant with attempted murder of K.M. (Pen. Code, §§ 187, subd. (a), 664;[1] count 1), with special allegations that the attempted murder was premeditated and deliberate (§ 189), that defendant personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and that he personally inflicted great bodily injury on K.M. under circumstances involving domestic violence (§ 12022.7, subd. (e)); assault with a firearm on K.M. (§ 245, subd. (a)(2); count 2), with special allegations that defendant used a firearm during this offense (§ 12022.5, subd. (a)), and that he personally inflicted great bodily injury on K.M. under circumstances involving domestic violence (§ 12022.7, subd. (e)); kidnapping of B.G. (§ 207, subd. (a); count 3), with a special allegation that he personally used a firearm during the offense (§ 12022.53, subd. (b)); assault with a firearm on B.G. (§ 245, subd. (a)(2); count 4), with a special allegation that he personally used a firearm during the offense (§ 12022.5, subd. (a)); false imprisonment by violence of B.G. (§ 236; count 5), with a special allegation that defendant personally used a firearm during the

---

[1]     Undesignated statutory references are to the Penal Code.

offense (§ 12022.5, subd. (a)); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 6); and possession of ammunition by a felon (§ 30305, subd. (a)(1); count 7). The second amended information alleged as to all counts defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and as to counts 1 through 4, defendant suffered a prior serious felony conviction (§ 667, subd. (a)). It also alleged multiple aggravating circumstances under rule 4.421(a)(1) through (3) and (b)(1) through (5) of the California Rules of Court. The parties stipulated defendant had been previously convicted of a felony and was legally prohibited from owning or possessing a firearm at the time. At trial, the court dismissed count 5 on the prosecutor's motion.

On July 3, 2024, a jury found defendant guilty of counts 1, 2, 4, 6, and 7; the jury found him not guilty of kidnapping on count 3 but found him guilty of the lesser included offense of false imprisonment (§ 237). The jury found the premeditation allegation (§ 189) not true on count 1 but otherwise found all firearm enhancements and domestic violence enhancements true. The trial court found all prior strike conviction, prior serious felony conviction, and aggravating circumstance allegations true.

At the sentencing hearing on August 1, 2024, the trial court imposed the upper term of nine years for the attempted murder, doubled to 18 years for the prior strike conviction, plus five years for the section 667, subdivision (a) prior serious felony conviction, plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement. The court imposed a term of two years (one-third the middle term, doubled due to the prior strike conviction) for the assault on B.G., plus three years, four months (which is reflected in the record as being one-third the middle term) for the firearm enhancement, to run consecutively. The court imposed a term of one year, four months (one-third the middle term) on the two felon-in-possession convictions, to run consecutively. The court also imposed and stayed the following sentences: five years for the section 12022.7, subdivision (e) enhancements on the attempted murder and

3.

assault of K.M.; eight years for the assault of K.M.; six years for false imprisonment; and 10 years for the section 12022.5, subdivision (a) enhancements on the assault of K.M. and false imprisonment. The court calculated the total sentence as 25 years to life plus 31 years.

Defendant filed a notice of appeal on August 1, 2024.

## FACTUAL SUMMARY

Defendant and K.M. started dating in April 2023 after defendant was released from prison. After about three months, defendant became violent with K.M. and started calling her names. On the morning of September 5, 2023, defendant was at K.M.'s house along with K.M. and her kids. K.M.'s friend B.G. arrived and met defendant for the first time. B.G. and K.M. went to K.M.'s bedroom to "hang[] out" and smoke methamphetamine. Defendant and K.M. began sporadically disagreeing over a magazine coupon and other things, but B.G. testified that they were not yelling and the argument was "[n]othing major" or too "confrontational." K.M.'s twin sister, L.M., arrived, noticed defendant had a gun in his waistband, but did not voice any concerns. L.M. helped the kids get ready then took them to school.

After L.M. and the kids left, K.M. and defendant's arguing continued. B.G. testified she saw defendant grow more frustrated, heard K.M. call defendant names, and at one point heard K.M. say to defendant, " 'Just leave then' " and " 'I don't care.' " B.G. testified that at this time, the disagreement between K.M. and defendant was an ongoing conversation, that there was "definitely tension" and that although B.G. did not recall any yelling, they were disagreeing enough where K.M. had told defendant that he could just leave. B.G. estimated that 15 minutes had elapsed between the time when the kids left for school and the time that K.M told defendant to leave. L.M. testified that at some point around this time, K.M. called to see if L.M. would pick her and B.G. up so they could "get out of there." L.M. testified she responded she would and hung up the call. L.M. testified that, "before I knew it, [K.M.] had called me back," and she heard K.M.

4.

shout, " 'Are you serious?  You're just going to pull out a gun on me.' "  L.M. asked what was happening, K.M. responded, "I need you here now," and then the phone went quiet. B.G. testified that, as she observed K.M. and defendant argue, she turned away to plug in her phone, then heard a gunshot.  B.G. turned back around, saw K.M. slumped over on the bed with blood coming down her face, and saw defendant standing near the entrance to the room pointing a gun at K.M.  L.M. then received a text from K.M.'s number with "911" and K.M.'s address.  K.M. testified she did not recall many of the details from the morning, including whether defendant pointed a gun at her or made any threats to shoot her, or how far defendant was from her when the shot was fired.

At trial, B.G. did not have a clear memory of what happened next.  At a preliminary hearing in November 2023, B.G. testified that after the shot was fired, defendant pointed a gun at her, grabbed her, told her to "get [her] sh[**]," and forced her to leave the house.  B.G. stated she did not want to leave with defendant, but he pushed her into his truck, put the gun in the side of his door, and "took off at a rapid speed." When defendant stopped at a stoplight a couple blocks away, B.G. jumped out of the truck, ran to a nearby convenience store, and called 911.  B.G.'s report to the 911 operator, played for the jury, reflected many of the same details of her escape.

L.M. arrived at the house shortly after the shooting to find defendant's truck gone and the front door unlocked.  She found K.M. sitting up on her bed in the back room gasping for air, with blood coming from her nose and eyes, and with tissue coming from her nose.  K.M.'s phone was lying about five inches away from where K.M. was sitting. L.M. saw a gunshot wound on the left side of K.M.'s face and active bleeding.  L.M. called 911, stating among other things that " '[K.M.] called me.  Her boyfriend had a gun to her head.' "  L.M. then applied pressure to K.M.'s wound until paramedics arrived. Law enforcement found a .380-caliber shell casing in a blanket on K.M's bed.

Defendant's ankle monitor placed him at K.M.'s house on September 5, 2023, from 8:30 a.m. until 11:41 a.m.  At 11:43 a.m., the monitor placed him near the

convenience store two blocks from K.M.'s house.  At 11:45 a.m., the monitor registered a tamper alert.  Defendant's parole agent attempted to contact defendant, but defendant did not answer.  The parole agent went to defendant's last known location and found the GPS device in a nearby apartment complex; it had been cut.  Law enforcement tracked defendant to the Lamont area, arrested him, and found .380-caliber bullets and an ammunition box in his truck.

K.M. suffered a single gunshot wound to the left side of her head, just next to the eye below the left temple; no exit wound for the bullet was readily observed.  Surgeons removed a .380-caliber bullet from K.M.'s neck, and she required medical treatment over the next month.  K.M. could not communicate for two weeks after the shooting, could not speak for almost a month, and was in a wheelchair until the end of 2023.  A testifying physician opined that memory issues for months after the event would not be surprising.

## DISCUSSION

### I.     Accident Instruction

Defendant argues his conviction for attempted murder and assault with a firearm should be reversed because he "was prejudiced by the trial court's failure to give a CALCRIM No. 3404 accident instruction when the evidence demanded it."  We disagree.

#### A.     Additional Background

At the jury instruction conference, defense counsel requested a CALCRIM No. 3404 accident instruction as related to the attempted murder and assault with a firearm charges.  The trial court denied the request "based on the state of the evidence." However, the court indicated it would not be improper for defendant to argue in closing arguments the lack of evidence indicating a culpable mental state for these charges, and defense counsel confirmed he intended to do so.

At closing, defense counsel argued K.M. and B.G.'s testimony should be entirely disregarded because K.M. and B.G. had been using methamphetamine.  Defense counsel

then emphasized how accidental discharge of the gun would negate the mental state element of both attempted murder and assault with a firearm, as follows:

> "Maybe there was a fight over drugs or who owed what or something like that. But when we have … people that demonstratively are lying at least about some things clearly, this seems to make more sense to me that there was some big argument that makes everyone involved look bad. Maybe it resulted in some pushing and shoving. I don't know. But it's entirely possible that there was a big argument that caused [defendant] to pull out his gun in anger and then a struggle ensued and then the gun went off. It's also entirely reasonable to conclude that [defendant] brandished the gun in anger, but due to lack of experience with guns didn't realize the safety was off and that was accidentally discharged. If it accidentally discharged then that would be not guilty of the attempt murder. If he was pointing it at her that would probably be enough for the assault with a firearm if that's what you believe happened that he was pointing it at her on purpose as opposed to some struggle. Again, if there's some sort of struggle or just some sort of big argument that results in this happening either by accident or otherwise unintentionally that's not attempt murder. It may be something else but not attempt murder. So, again, we will likely never know what happened in the lead up to the shot[,] but it is a reasonable conclusion that the gun went off accidently or unintentionally or even that [defendant] intended to shoot her but not to kill her if he aimed it but then she moved in some way or tried to charge him."

### B.      Standard of Review

On appeal, we review de novo the trial court's denial of a requested jury instruction and examine whether the proponent's theory was supported by substantial evidence. (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.)

### C.      Analysis

" '[T]he trial court is required to instruct the jury on the general principles of law that are closely and openly connected with the evidence and that are necessary to the jury's understanding of the case.' " (*People v. Morales* (2021) 69 Cal.App.5th 978, 990.) " ' "[A] defendant has a right to an instruction that pinpoints the theory of the defense …." ' " (*People v. Bivert* (2011) 52 Cal.4th 96, 120.) Even upon request by the defense, however, a court is only required to give a pinpoint instruction "if it is supported

by substantial evidence." (*People v. Ward* (2005) 36 Cal.4th 186, 214.) " ' " 'Substantial evidence is evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' " ' " (*People v. Benavides* (2005) 35 Cal.4th 69, 102.) In determining whether the evidence is sufficient to warrant a jury instruction, the court does not weigh credibility. (*People v. Thomas* (1990) 219 Cal.App.3d 134, 143 ["The court should not measure the substantiality of the evidence by undertaking to weigh the credibility of the witnesses, but if the evidence is minimal and insubstantial the court need not instruct."].)

Here, the record lacks substantial evidence to support giving an accident instruction. The standard instruction on accident reads:

> "The defendant is not guilty of [the charged crime] if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of [the charged crime] unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent." (CALCRIM No. 3404.)

Relevant here, for a charge of attempted murder, the prosecution must prove the defendant took a direct step toward killing another person and intended to kill that person. (CALCRIM No. 600.) For assault with a firearm, the prosecution must prove the defendant willfully committed an act that by its nature would directly and probably result in the application of force to another person. (CALCRIM No. 875.)

Defendant contends the trial court should have been required to give the requested accident instruction because: (1) there was no evidence of a heated argument or altercation between defendant and K.M. leading up to the shooting, and the disagreement about a coupon in a magazine appeared implausible as a motive for attempted murder; (2) K.M. did not remember seeing defendant point a gun at her, only that he showed it to her; (3) defendant only fired one shot, not multiple shots, so it is possible he did not intend to kill K.M.; and (4) the shooting occurred in close proximity in a closed space, meaning there could have been a struggle for the gun. Defendant also argues substantial

8.

evidence exists because in closing, defense counsel posited alternate explanations for the shooting, such as defendant's lack of experience with firearms. Defendant fails to persuade.

First, defendant is incorrect to argue there was *no* evidence of a heated argument or altercation between defendant and K.M. immediately preceding the shooting. True, neither B.G. nor L.M. noted anything tense in the argument in the earlier part of the morning. However, after L.M. and kids left the house, B.G. testified she saw defendant grow more frustrated, heard K.M. call defendant names, and at one point heard K.M. say to defendant, " 'Just leave then' " and " 'I don't care.' " L.M. testified that at some point around this time, K.M. called to see if L.M. would pick her and B.G. up so they could "get out of there." After that call ended, L.M. testified that, "before I knew it, [K.M.] had called me back," and she heard K.M. yelling and shouting, " 'Are you serious? You're just going to pull out a gun on me.' " L.M. asked what was happening, K.M. responded, "I need you here now," and then the phone went quiet. L.M.'s 911 call reflected her memory that K.M. said defendant " 'had a gun to her head.' " Defendant's argument that "there was no heated argument or altercation" prior to the shooting is belied by the record.

Second, and dispositive here, courts have long noted that " '[a]n absence of evidence is not the equivalent of substantial evidence.' " (*People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 498.) Similarly, an attorney's speculations in closing argument are not evidence, let alone substantial evidence. (See *People v. Soriano* (2021) 65 Cal.App.5th 278, 286 [reminding that " ' " ' " [b]y definition, 'substantial evidence' requires *evidence* and not mere speculation." ' " ' "].) Thus, defense counsel's speculation about what *could have happened*—because defendant and K.M. were in close proximity, because of the absence of multiple gunshots, because of K.M.'s lack of memory, and because of defendant's purported lack of experience with firearms—does not constitute substantial evidence. Defendant's case differs from cases where, for

example, there was actual testimony supporting an accident theory during the events that formed the basis of the charged crime. (See, e.g., *People v. Thurmond* (1985) 175 Cal.App.3d 865, 868, 873 [finding error in the failure to give an accident instruction where the defendant testified he attempted to let the hammer down but the gun fired anyway].) Here, there was no testimony or evidence introduced that the gun fired accidentally. Because the record is devoid of evidence supporting defendant's accident theory, the trial court did not err in refusing to include CALCRIM No. 3404 in its instructions to the jury. (*People v. Cole*, *supra*, 33 Cal.4th at p. 1206; *People v. Thomas*, *supra*, 219 Cal.App.3d at p. 143.)

## II. Errors in Sentencing and Corrections to the Abstract of Judgment

Defendant contends the trial court's oral pronouncement at the sentencing hearing for count 4 is incongruent. The court purported to issue a sentence on a firearm enhancement attached to count 4 of "3 years, 4 months," which the court stated was "one-third the midterm." However, one-third the middle term for the firearm enhancement would be one year, four months; three years, four months would be one-third the upper term. Defendant also notes the abstract of judgment and record contain clerical errors. The People concede error.

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) "Courts may correct clerical errors at any time, and appellate courts … that have properly assumed jurisdiction [can] order[] correction of abstracts of judgment that [do] not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) " 'Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is "whether the error was made in rendering the judgment, or in recording the judgment rendered." ' [Citation.] 'An amendment that substantially modifies the original judgment or

10.

materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion.' " (*People v. Codinha* (2023) 92 Cal.App.5th 976, 985.)  An abuse of discretion occurs when the trial court "is unaware of its discretion …." (*In re White* (2020) 9 Cal.5th 455, 470.)

### A.    Count 4

At the sentencing hearing on August 1, 2024, the trial court imposed a sentence of two years under section 245, which the court stated was "one-third the midterm."  The court also stated it was sentencing defendant to "3 years, 4 months, which is one-third the midterm pursuant to [s]ection 12022.5[, subdivision] (a) of the Penal Code."  The minutes reflected the same pronouncement.

However, as defendant notes, section 12022.5, subdivision (a) sets the punishment range as being "for 3, 4, or 10 years."  One-third the middle term would be one year, four months, not three years, four months.  It is not clear from the record whether the trial court intended for defendant to be sentenced to the middle term of one year, four months or the upper term of three years, four months, as the court used each phrase equally at the sentencing hearing.  Further, the court stated it would be following the recommendations of the probation officer, and a review of the report reveals the same incongruity; on count 4, the probation officer recommends the sentence "be enhanced by three years, four months (one-third of the [midterm]) pursuant to [s]ection 12022.5[, subdivision] (a) …."  Further muddying the issue, earlier in the probation report, the officer recommends imposition of "three years, four months (one-third the selected term)" on the section 12022.5, subdivision (a) enhancement, but the recommendation was made with respect to count 2 which was stayed and on which the court imposed a 10-year firearm enhancement.  In short, it is not clear on the record before us whether the trial court intended to impose one-third the middle term or one-third the upper term on the section 12022.5, subdivision (a) enhancement on count 4.

Neither can we correct the issue on our own. Under the relevant statute, the trial court had discretion to impose one-third of either the upper or middle term for the firearm enhancement. (§ 1170.1, subd. (a) [providing no discretion for a consecutive term on a subordinate offense by prescribing "one-third of the middle term of imprisonment," but granting discretion of "one-third of *the term* imposed for any specific enhancements applicable to those subordinate offenses" (emphasis added)]; *People v. Hill* (2004) 119 Cal.App.4th 85, 92 [holding the unambiguous language of section 1170.1 grants the trial court discretion to impose one of three possible terms under a firearm enhancement].) Thus, remand is required for the trial court to clearly exercise its discretion. (*People v. Codinha, supra*, 92 Cal.App.5th at p. 985 [" 'An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion.' "]; see *In re White, supra*, 9 Cal.5th at p. 470.)

In addition, defendant identifies clerical errors in the abstract of judgment for count 4. First, the abstract of judgment reflected the total time sentenced, but did not list the section 12022.5, subdivision (a) enhancement attached to count 4. Second, the abstract fails to reflect the doubling (due to the prior strike) of the middle term sentence on the section 245, subdivision (a) conviction. The abstract of judgment issued after resentencing on remand shall correct these errors.

### B. Counts 2 and 3

Defendant notes other clerical errors in the abstract of judgment. First, the abstract fails to account for the fact that, on count 2, the section 12022.7, subdivision (e) enhancement was stayed under section 654, as pronounced by the trial court at the sentencing hearing. Instead, the abstract states a section 12022.7, subdivision (e) enhancement was attached to count 3, despite no such enhancement was alleged for that count. Second, the abstract fails to note that for count 3, the section 12022.5,

12.

subdivision (a) enhancement was stayed by the court at the sentencing hearing under section 654. The abstract of judgment issued after resentencing on remand shall correct these errors.

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded to the trial court to conduct a full resentencing. In all other respects, the judgment is affirmed.


                                                          GUERRA, J.†

WE CONCUR:


HILL, P. J.


DETJEN, J.

---

†     Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.