Filed 10/13/20  P. v. Montoya CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076004 |
| Plaintiff and Respondent, | (Super. Ct. No. SCS296761) |
| v. | |
| LOUIS SHAWN MONTOYA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed as modified.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Arlene A. Sevidal, Randall Einhorn and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Louis Shawn Montoya sexually assaulted Tina J.  Two days later he grabbed Karina V., but she was able to escape.  For his actions against Tina, a jury convicted him of two counts each of forcible sexual penetration (Pen.

Code, § 289, subd. (a)(1)(A), counts 2 and 6), and one count each of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4), count 1), sexual battery by restraint (Pen. Code, § 243.4, subd. (a), count 3), forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(A), count 4), and forcible rape (Pen. Code, § 261, subd. (a)(2), count 5).

For the incident involving Karina, the same jury convicted him of assault with intent to commit rape (Pen. Code, § 220, subd. (a)(1), counts 8 and 10), misdemeanor sexual battery (Pen. Code, § 243.4, subd. (e)(1), count 9), false imprisonment by violence (Pen. Code, §§ 236, 237, subd. (a), count 11), assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4), count 12), and resisting an officer (Pen. Code, § 148, subd. (a)(1), count 13).

The court found true that Montoya had previously served a prior prison term (Pen. Code, § 667.5, subd. (b)), and that he had two prior serious felony convictions (Pen. Code, § 667, subd. (a)), and two prior strike convictions (Pen. Code, §§ 667, subd. (b) through (i), 668 & 1170.12). The court imposed an indeterminate sentence of 175 years to life, and a determinate sentence of 33 years.

Montoya appeals, contending the trial court erred by denying his motion to sever his charges with respect to the two women into separate trials. He claims that Evidence Code section 1108 is unconstitutional because it permits evidence of a defendant's prior crimes to be admitted to show a defendant's propensity to commit such crimes again. He asserts the trial court improperly admitted evidence under this statute as well as under Evidence Code section 1101, and that the court abused its discretion by allowing the evidence to be used to demonstrate that he had a propensity to commit sexual crimes.

Montoya also argues that his three one-year enhancements for his prior prison terms should be stricken based on Senate Bill No. 136. The People concede that the three one-year enhancements should be stricken, and we agree. Otherwise, we reject Montoya's contentions.

FACTUAL AND PROCEDURAL BACKGROUND

*First Incident: Tina - Counts 1 through 6*

On the night of October 10, 2017, Tina was on a bus and observed Montoya seated nearby. Tina later transferred to another bus. This bus was full and Tina did not see Montoya on the bus. When Tina exited the bus and began walking home, she noticed that Montoya had also gotten off the bus.

After Tina turned around and told Montoya to walk ahead of her, he put her in a chokehold. Montoya took her phones away and dragged her behind some bushes. Montoya got Tina on the ground and continued to choke her as he started to take off her pants. Montoya stopped choking Tina after she told him that she would be quiet.

Montoya pulled Tina's pants down to her knees and roughly inserted his fingers into her vagina. He kissed her breasts, orally copulated her, and had sexual intercourse with her. Montoya then roughly fingered her vagina. When he stopped, Montoya helped Tina get dressed and stand up. He offered Tina some whisky and a cigarette and claimed this was his first time "doing that."

Tina started walking home and Montoya joined her. When they reached the front entrance to the mobile home park where she lived, Tina asked for her phones back. Montoya returned one phone, but claimed that he did not have the second phone. After Montoya left, Tina went inside her home and told her aunt that she was "just raped." Her aunt called 9-1-1 and Tina spoke to the dispatcher. The jury heard the 9-1-1 call.

3

Police responded and spoke to Tina, who was crying and appeared "emotionally traumatized." Police took her to the scene of the attack, and then to the hospital where a nurse conducted a sexual assault examination. Tina had multiple abrasions on her back, buttocks, and leg. She had a bruise on her upper back and left leg, and debris around her external genital area. The nurse observed abrasions on Tina's lower cervix, and redness on her lower vaginal wall. The cervical trauma suggested something such as fingers or a penis had "bunt[ed] up against" Tina's cervix. Subsequent DNA analysis of swabs taken from Tina's face matched Montoya and the swabs taken from her vaginal area very strongly showed that Montoya had deposited the DNA.

*Second Incident: Maria V. - Count 7*

Two days after Tina's sexual assault, Maria V. was working at a laundromat in National City when she observed Montoya walk around the store, sit on a bench and then pull down the window shades. Eventually, Montoya went into a restroom. He left the restroom, but then went back inside the restroom where he remained for approximately 10 minutes. Maria knocked on the door because a client needed to use the restroom. When Montoya opened the restroom door he had his zipper down and his penis exposed. Later, a female client told Maria that Montoya had started masturbating. Maria called the police after Montoya refused to leave. The jury heard this phone call and watched surveillance video of the incident.

The People tried Montoya for indecent exposure related to this incident, but the jury acquitted.

*Third Incident: Karina - Counts 8 through 13*

About one hour later and less than one mile away from the laundromat, Montoya appeared at the gas station where Karina worked. He asked Karina for the location of a Western Union. Montoya used the restroom and then left

4

while Karina continued to work. Montoya returned, told Karina that the Western Union was closed and then went into the restroom again. After about 15 to 20 minutes, Karina knocked on the restroom door and told Montoya that he needed to leave, which he did. Montoya returned, claiming that he had forgotten his backpack in the restroom. When Karina poked her head into the restroom to look for the backpack, Montoya grabbed her buttocks and tried to push her into the restroom. Karina pushed Montoya away and he left after she threatened to call the police.

Later that evening, Karina opened a storage area and saw Montoya inside. As she tried to turn around and leave, Montoya grabbed her by the arm, pulled her into the storage area and onto the ground. He got on top of her and started choking her. After Karina managed to escape, Montoya grabbed her again, but she punched him in the face. She called the police after Montoya ran away. The jury heard this 9-1-1 call and saw video surveillance of the incident.

When police arrived, Karina appeared upset and was crying. As she spoke, she saw Montoya and the police chased him. With the assistance of a police helicopter and a police dog, officers were able to take Montoya into custody after Tasing him. That evening, Karina identified Montoya as her attacker.

*Fourth Incident: Assault on a Deputy - Counts 14 through 16*

In June 2018, while Montoya was being held at the Vista Detention Facility in relation to the charges from October 2017, Montoya struck a deputy and the men exchanged several punches. The People charged Montoya with battery on a peace officer with injury (Pen. Code, § 243, subd. (c)(2), count 14), battery by an inmate on a non-inmate (Pen. Code, § 243.15, count 15), and resisting an executive officer (Pen. Code, § 69; count 16).

5

## DISCUSSION

## I. *EVIDENCE CODE SECTION 1108*

### A. Additional Background

The prosecution argued that Montoya's sexual crimes were cross-admissible under Evidence Code[1] sections 1101 and 1108, and that section 352 did not preclude the admission of this evidence. Montoya disagreed, contending that this evidence was unduly prejudicial under section 352.

The trial court denied Montoya's request to exclude this evidence and permitted the jury to consider each charged offense not only as evidence of intent, but also to show he had a propensity to commit sexual crimes, and therefore may have committed the charged offenses. The court instructed the jury with a modified version of CALCRIM No. 375, regarding evidence of charged offenses to prove intent, as follows:

> "The People presented evidence that the defendant committed sexual penetration by force or fear and sexual battery felony related to Tina J. The People also presented evidence that the defendant committed assault with intent to commit rape and sexual battery misdemeanor related to Karina V.
>
> "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
>
> "If the People have not met this burden, you . . . must disregard this evidence entirely.
>
> "If you decide that the defendant committed one of the offenses regarding Tina J., you may, but are not required to consider that evidence for the limited purpose of deciding whether the defendant acted with the intent to touch

---

[1] Undesignated statutory references are to the Evidence Code.

6

Karina V. for the purpose of rape in Counts 8 and 10, and the defendant acted with the intent to touch Karina V. for the specific purpose of sexual arousal, sexual gratification or sexual abuse in Count 9.

"If you decide that the defendant committed one of these offenses regarding Karina V., you may, but are not required to, consider that evidence for the limited purpose of deciding whether the defendant acted with the intent to penetrate Tina J. for the purpose of sexual abuse, arousal or gratification in Counts 2 and 6 and the defendant acted with the intent to touch Tina J. for the specific purpose of sexual arousal, sexual gratification or sexual abuse in Count 3.

"In evaluating this evidence, consider the similarity or lack of similarity between the offenses. If you conclude that the defendant committed one of the offenses related to Tina J., that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the offenses related to Karina V. The People must still prove each charge beyond a reasonable doubt.

"If you conclude that the defendant committed one of the offenses related to Karina V., that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the offenses related to Tina J. The People must still prove each charge beyond a reasonable doubt."

The court also instructed with CALCRIM No. 1191B, which informed the jury that it could consider the offenses as evidence of propensity, as follows:

"The People presented evidence that the defendant committed the crimes of sexual penetration by force or fear as charged in Counts 2 and 6, sexual battery felony as charged in Count 3, oral copulation by force or fear as charged in Count 4, rape by force or fear as charged in Count 5, indecent exposure as charged in Count 7, assault with intent to commit rape as charged in Counts 8 and 10, and sexual battery misdemeanor as charged in Count 9.

7

"If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and based on that decision also conclude that the defendant was likely to commit and did commit the other sex offenses charge in this case.

"If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge beyond a reasonable doubt."

B. Legal Principles

Section 1101 generally "prohibits the admission of other-crimes evidence for the purpose of showing the defendant's bad character or criminal propensity." (*People v. Catlin* (2001) 26 Cal.4th 81, 145.) Section 1108 contains an exception to that general rule, allowing evidence that the defendant committed "another sexual offense or offenses" to establish the defendant's propensity to commit sexual offenses and for its bearing on the probability or improbability the defendant has been falsely or mistakenly accused of such an offense. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 911-912 (*Falsetta*).)

"[S]ection 1108 permits the prosecutor in a sexual offense trial to present evidence of the defendant's other sexual offenses, so long as the other sexual offenses are not inadmissible pursuant to . . . section 352." (*People v. Merriman* (2014) 60 Cal.4th 1, 57 (*Merriman*).) Evidence is admissible under section 352 if its probative value is not "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) The weighing process under section 352

8

safeguards the constitutional validity of section 1108.  (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1166 (*Villatoro*); *Falsetta, supra*, 21 Cal.4th at p. 917.)

In determining the admissibility of evidence of a defendant's other sexual offenses under sections 1108 and 352, a trial court must consider whether (1) the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant committed the charged offense; (2) the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) the uncharged conduct is remote; (4) the propensity evidence is likely to confuse or distract the jurors; and (5) admitting the propensity evidence will unduly consume time.  (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117.)

We review the trial court's ruling to admit other incidents under section 352 for abuse of discretion.  (*People v. Harris* (1998) 60 Cal.App.4th 727, 736-737.)  " 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "  (*People v. Foster* (2010) 50 Cal.4th 1301, 1328-1329.)

C.  Analysis

Montoya contends the trial court violated his Fourteenth Amendment right to due process by admitting evidence under section 1108.  In a lengthy argument, he asserts we should re-examine the California Supreme Court's reasoning in *Falsetta* because actual practice has proved *Falsetta's* premise to be false.  He claims that "appellate courts almost invariably affirm when trial courts allow juries to convict on the basis of sexual propensity evidence."

9

Montoya urges that "the time has come for our courts to revisit and overrule *Falsetta* and its progeny."[2]

Montoya concedes that the California Supreme Court has rejected due process challenges to a trial court's admission of evidence under section 1108 (*Falsetta*, *supra*, 21 Cal.4th at p. 922), and that we are bound by this ruling (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455).[3] "As an intermediate appellate court we . . . do not reexamine doctrines approved by the Supreme Court with a view to enunciating a new rule of law." (*Fuller v. Standard Stations, Inc.* (1967) 250 Cal.App.2d 687, 694.)

Even if section 1108 is constitutional, Montoya asserts that the trial court erred in admitting the evidence under section 352 because its prejudicial impact far outweighed its probative value. He criticizes the trial court, claiming it undertook a "rote exercise" and gave no indication that it carried out a serious weighing process. We reject this argument because we

---

[2] To support his argument that *Falsetta* requires reexamination, Montoya asserts that only two out of the 188 published opinions on this issue have reversed based on improper admission of sexual propensity evidence. This argument is not persuasive, however, because "[t]he weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

[3] In *People v. Wilson* (2008) 44 Cal.4th 758 (*Wilson*), the California Supreme Court rejected a defendant's invitation "to reconsider the correctness" of its holding in *Falsetta*. (*Wilson, supra,* at p. 797.) In *Wilson*, the court reaffirmed the reasoning of *Falsetta* that "although evidence of criminal's propensity had long been excluded in this state, such 'long-standing practice does not necessarily reflect a *fundamental*, unalterable principle embodied in the Constitution' [citation], that a rule permitting admission of such evidence does not offend those fundamental due process principles [citation], and that 'the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from [the] defendant's due process challenge.' " (*Wilson, supra,* at p. 797.)

may conclude that the trial court implicitly undertook the weighing process in overruling Montoya's section 352 objection. (*People v. Bryant* (2014) 60 Cal.4th 335, 407.) On appeal, the trial court's ruling is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To overcome the presumption of correctness, the appellant must provide reasoned argument with citations to legal authority on each point raised. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.)

Here, Montoya provided no analysis explaining how the trial court abused its discretion in failing to exclude the evidence under section 352. We deem the contention forfeited based on the lack of any legal analysis. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Nonetheless, we examined the section 352 factors. The incidents involving Tina and Karina have a high degree of similarity. Montoya subdued both women by choking them. He got both victims on the ground, straddled them and choked them. The two incidents were not remote or stale, happening only two days apart. The evidence was equally strong for both incidents. DNA evidence corroborated Tina's testimony, while video surveillance corroborated Karina's testimony. Although Montoya was able to sexually assault Tina, while Karina fought him off before any sexual assault occurred, the circumstances of Tina's assault was not unduly inflammatory, and thus unlikely to prejudice the jury against Montoya.

It is unlikely that the jury was confused hearing the evidence of both incidents. CALCRIM No. 220 (the People's obligation to prove their case beyond a reasonable doubt), "combined with the court's instruction that the People must prove each element of the offense (which is given whenever the court instructs on the elements of an offense), adequately informs the jury that it must find that each element has been proved beyond a reasonable

11

doubt." (*People v. Riley* (2010) 185 Cal.App.4th 754, 770.)  Once the jury found guilt beyond a reasonable doubt as to one count, CALCRIM No. 1191B permitted the jury to draw an inference of propensity to commit other sexual offenses.  This instruction also reminded the jury that guilt on one count was insufficient, by itself, to find guilt on any other count.  Finally, the jury found Montoya not guilty of the charge related to Maria.  This defense verdict indicates that the jury considered the evidence separately and was not prejudiced by the evidence or argument related to the other incidents.

We conclude that the trial court did not err in admitting the evidence under section 1108.[4]  Because the challenged evidence was appropriately admitted under section 1108, which permitted the jury to consider the evidence for any relevant purpose, no harm resulted from the jury's consideration of the evidence for any of the purposes articulated in section 1101, subdivision (b).  (*People v. Loy* (2011) 52 Cal.4th 46, 63.)  Accordingly, we need not address Montoya's section 1101 argument.

As a supporting argument, Montoya contends that CALCRIM Nos. 375 and 1191B were "contradictory and confusing" and exacerbated the prejudicial impact of the evidence.  Montoya, however, did not object to, or request amplification or clarification of these instructions in the trial court

---

[4]  Montoya also argues that section 1108, as applied, violates the Fourteenth Amendment due process guarantee because it contravenes the essential presumption of innocence.  "To show a violation of due process, a defendant must show that the statute, as applied, offended a principle of justice so rooted in the traditions and consciousness of the country that it is considered fundamental." (*People v. Manning* (2008) 165 Cal.App.4th 870, 877.)  Section 1108 requires a trial court to engage in the weighing process under section 352 before admitting propensity evidence.  The court did that here and did not abuse its discretion in allowing this evidence.  On these facts, application of section 1108 did not violate any fundamental principle of due process.

and forfeited the claim of error for purposes of appeal. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 906.) His claim that the prosecutor's closing argument made the matter worse, is similarly forfeited. (*People v. Panah* (2005) 35 Cal.4th 395, 462.)

Nonetheless, we note that CALCRIM No. 375 is similar to CALJIC No. 2.50.01 approved by our high court in *Falsetta, supra*, 21 Cal.4th at page 924. Additionally, CALCRIM No. 1191B is essentially identical to the instruction approved in *Villatoro, supra*, 54 Cal.4th at page 1167. (*Villatoro, supra,* at p. 1169.) Moreover, the prosecutor did not misstate these instructions, and even if the jury was confused by the prosecutor's summary of these instructions, the trial court informed the jurors immediately before the prosecutor's argument that they must "follow the law that I give you, not as interpreted by one of the lawyers."

## II. *SEVERANCE*

### A. Additional Background

The People filed an amended information charging Montoya with 16 counts related to the four incidents. Defense counsel sought to sever the charges involving Tina (counts 1 to 6) from counts 7 through 16. Counsel argued that the evidence pertaining to the third incident involving Karina was extremely weak and that the remaining counts pertaining to Maria and the deputy were dissimilar.

The court granted the motion as to the fourth incident involving the deputy (counts 14 through 16), but denied the motion regarding the charges involving Maria and Karina.

### B. Legal Principles

"[C]onsolidation or joinder of charged offenses 'is the course of action preferred by the law.'" (*People v. Soper* (2009) 45 Cal.4th 759, 772 (*Soper*).)

13

When separate accusatory pleadings assert offenses that are "connected together in their commission or [are] . . . of the same class of crimes or offenses, . . . the court may order them to be consolidated." (Pen. Code, § 954.) The purpose of Penal Code section 954 is to avoid the " 'increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.' " (*Soper, supra,* at p. 772.) The term "same class of crimes or offenses" in Penal Code section 954 refers to offenses that possess common characteristics or attributes, and courts have interpreted the term broadly. (See *People v. Thomas* (1990) 219 Cal.App.3d 134, 139-140 [charges of attempted murder, robbery, and ex-felon in possession of a firearm properly joined as belonging to the class of assaultive crimes against the person].)

"Joinder is generally proper when the offenses would be cross-admissible in separate trials, since an inference of prejudice is thus dispelled." (*People v. Arias* (1996) 13 Cal.4th 92, 126 (*Arias*).) " 'Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.)

"[T]he first criterion—cross-admissibility—can be dispositive when it is determined that the charged crimes would be cross-admissible at separate trials." (*Frank v. Superior Court* (1989) 48 Cal.3d 632, 639.) We review the denial of a severance motion for an abuse of discretion, based on the facts

14

before the court at the time of its ruling, which requires reversal only where it is reasonably probable that separate trials would have led to a more favorable result for defendant. (*People v. Burney* (2009) 47 Cal.4th 203, 237 (*Burney*).) A defendant seeking severance must make a stronger showing of prejudice than required for exclusion of evidence of other crimes. (*Arias, supra*, 13 Cal.4th at p. 127.) A "determination of prejudice is a highly individualized exercise, necessarily dependent upon the particular circumstances of each individual case." (*Williams v. Superior Court* (1984) 36 Cal.3d 441, 452, superseded in part by statute as stated in *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1229, fn. 19.)

C. Analysis

Montoya contends the trial court abused its discretion by consolidating Tina's sexual assault with the crimes committed against Maria and Karina because the evidence was not cross-admissible. He argues that the forcible rape evidence was far more inflammatory than the other evidence, and that the joinder served to combine three close cases so that the total evidence was much stronger. He further alleges that joinder resulted in "gross unfairness" at trial amounting to a denial of due process. We disagree with both assertions.

The offenses charged in this case with respect to victims Tina, Maria and Karina "are . . . deemed to be of the 'same class,' insofar as [they] . . . share common characteristics as assaultive crimes against the person." (*People v. Lucky* (1988) 45 Cal.3d 259, 276.) Accordingly, joinder was proper under Penal Code section 954. Thus, Montoya "can only predicate error in the denial of severance on a clear showing of potential prejudice." (*People v. Stanley* (2006) 39 Cal.4th 913, 934.)

Turning to the first criterion, cross-admissibility, Montoya argues that evidence of the three crimes would not be cross-admissible because different witnesses were called to testify regarding each separate offense. This argument misapprehends the cross-admissibility criterion.

The trial court denied severance, concluding that all evidence was cross-admissible under section 1108. We agree. Our review of the record reveals that some of the crimes allegedly committed by Montoya against Tina, Maria and Karina were enumerated "sexual offenses" as defined in section 1108. (§ 1108, subd. (d)(1)(A)(B).) Thus, had Montoya been subject to three separate trials, each would have involved accusations of a sexual offense and the evidence in the hypothetical separate trials would have been cross-admissible.

Under these circumstances, evidence of Montoya's commission of another sexual offense was admissible under section 1108 so long as this evidence was not inadmissible pursuant to section 352. As discussed above, we reject Montoya's argument that the court abused its discretion in applying section 352. (*Ante*, pt. I.C.) Additionally, there is no abuse of discretion in denying severance where, as here, cross-admissibility is present. (*Arias*, *supra*, 13 Cal.4th at p. 128.) Review of the remaining factors does not otherwise establish prejudice.

The second criterion examines whether some charges are unusually inflammatory. While the completed sexual assault on Tina was more egregious than the incomplete sexual assault on Karina and the alleged indecent exposure for Maria, the charges with respect to all three victims were sexual offenses under section 1108 and presented a question of degree, but not of kind. Moreover, given the strength of the evidence in support of the charges pertaining to Tina and Karina, it is immaterial that Montoya's

sexual assault of Tina might be characterized as more inflammatory than the other charges. (See *People v. Anderson* (2018) 5 Cal.5th 372, 390 [trial court did not err in denying motion to sever charged burglaries from "far more serious" charged crimes, "given the strength of the evidence regarding those burglaries"].) Finally, because evidence of each incident would have been cross-admissible in the trial of the other cases, the risk of a prejudicial spillover effect was low.

Montoya further alleges that joinder of the three incidents resulted in "gross unfairness" at trial amounting to a denial of due process. " 'If the court's joinder ruling was proper when it was made, however, we may reverse a judgment only on a showing that joinder " 'resulted in 'gross unfairness' amounting to a denial of due process.' " ' " (*Burney*, *supra*, 47 Cal.4th at p. 237.) We will reverse a judgment for gross unfairness "only if it is reasonably probable that the jury was influenced by the joinder in its verdict of guilt." (*People v. Simon* (2016) 1 Cal.5th 98, 129-130.) "Appellate courts have found ' "no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials." ' " (*Soper*, *supra*, 45 Cal.4th at p. 784.)

Here, the evidence establishing Montoya's guilt on these counts was clear-cut and distinct. Moreover, the court instructed the jury that each of the counts was a separate crime that must be separately decided. (CALCRIM No. 3515.) Nothing in the record indicates the jury failed to follow this instruction. (*Merriman*, *supra*, 60 Cal.4th at pp. 48-49 [absent contrary showing, jury presumed to follow instructions to consider each count separately].) We conclude there was no reasonable probability that the joinder of the three incidents tainted the jury's verdicts in this case.

## III. *SENATE BILL NO. 136*

The court found true that Montoya had previously served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b). The court imposed three one-year sentence enhancements for counts 1, 3, and 10.

Senate Bill No. 136 amended Penal Code section 667.5, subdivision (b), regarding prior prison term enhancements. Former Penal Code section 667.5, subdivision (b), imposed an additional one-year term for each prior separate prison term or county jail felony term, except under specified circumstances. However, amended Penal Code section 667.5, subdivision (b), imposes that additional one-year term only for each prior separate prison term served for a conviction of a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (Pen. Code, § 667.5, subd. (b).) "By eliminating [Penal Code] section 667.5, subdivision (b) enhancements for all prior prison terms except those for sexually violent offenses, the Legislature clearly expressed its intent in Senate Bill No. 136 . . . to reduce or mitigate the punishment for prior prison terms for offenses other than sexually violent offenses." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

Montoya's prior terms were not for a sexually violent offense under Welfare and Institutions Code section 6600, subdivision (b). Accordingly, the three Penal Code section 667.5, subdivision (b), enhancements imposed by the trial court are now unauthorized under the amended statute. Montoya is entitled to the benefit of the new statute under *In re Estrada* (1965) 63 Cal.2d 740. (*People v. Keene* (2019) 43 Cal.App.5th 861, 865.) The now-inapplicable enhancements under Penal Code section 667.5, subdivision (b), currently attached to Montoya's sentence are stricken. (Pen. Code, § 1260 [granting appellate court power to reduce punishment imposed].)

## DISPOSITION

We modify the judgment to strike Montoya's three one-year prior prison enhancements attached to counts 1, 3, and 10.  The superior court is directed to prepare an amended abstract of judgment reflecting this modification and to forward a certified copy thereof to the California Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


DATO, J.

19